Louvenia JENKINS, Appellant,

v.

Otis R. BOWEN, Secretary of Health and Human Services, Appellee.

No. 87–2717.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 23, 1988.

Decided Nov. 23, 1988.

Joel D. Ferber, St. Louis, Mo., for appellant.

Wesley D. Wedemeyer, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before JOHN R. GIBSON, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

Louvenia Jenkins appeals the district court's[1] order accepting the recommendation of Magistrate William S. Bahn to affirm the Secretary of Health and Human Services' denial of Jenkins' application for disability benefits under 42 U.S.C. §§ 416(i) and 423. We affirm the district court's order.

Jenkins is fifty-six years old and has a junior high school education. From 1969 until 1982 Jenkins worked for J & S Security as a security guard. Her work as a security guard included considerable walking and standing and required her to carry a gun. In 1982, Jenkins quit her job due to various health problems, such as pain in

---

1. The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri.

her waist and swelling in her legs, which she claims made her unable to work.

On April 1, 1985 Jenkins filed an application for disability benefits under Title II with the Secretary of Health and Human Services. The application was denied after initial consideration and reconsideration. Upon request, Jenkins was granted a hearing before an administrative law judge and the ALJ denied Jenkins disability benefits. Jenkins then sought review of the ALJ's decision within the agency, but the appeals council denied the appeal. The ALJ's decision therefore became the final decision of the Secretary. Jenkins then appealed this decision to the district court. After reviewing the ALJ's decision, a magistrate recommended that the district court affirm the ALJ's decision. The district court accepted this recommendation and Jenkins now appeals.

At the hearing before the ALJ Jenkins gave testimony concerning her medical background which led to her disablement. Jenkins complained of a painful boil condition under her arms that requires her to regularly take antibiotics, and stated that she had pain in her lower back and waist and in her arms and knees that severely limits her activity. Medical evidence submitted at the hearing included hospital reports by several treating physicians who examined Jenkins for various medical problems. The evidence revealed that Jenkins suffered from recurrent skin infections and boils, chronic back pain with degenerative joint and disc disease, and arthritis in her knees. The evidence further indicated, however, that if Jenkins were treated with proper medication and underwent physical and occupational therapy, she would not be incapacitated.

Additionally, a vocational expert testified that Jenkins' past relevant work as a security guard was light and semi-skilled and the skills involved are generally transferable to other types of security jobs. These skills consist of knowledge of safety rules and procedures, some reasonable judgment used in dealing with people, being able to respond rather quickly and knowledge of and usage of firearms. In response to a hypothetical question, Smith responded that there were approximately 1000 sedentary security guard jobs available in the region in which Jenkins lives.

The ALJ considered Jenkins' age, education, work experience, and exertional and non-exertional impairments and found that Jenkins did not have an impairment listed in or equal to any found in the Medical–Vocational guidelines, 20 C.F.R. pt. 404, subpt. P, app. 2 (1988) ("the guidelines"), and therefore was not disabled based upon the objective medical evidence. The ALJ recognized that under *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir.1984) (subsequent history omitted), he could not disregard Jenkins' subjective complaints solely because the objective medical evidence did not fully support them, and that these complaints may be discounted only if there are inconsistencies in the evidence as a whole. The ALJ indicated, however, that such inconsistencies existed in Jenkins' testimony and that Jenkins' allegations of pain were not entirely credible. The ALJ's conclusion, as adopted by the Secretary, was that Jenkins could not perform the duties required in her past work as a security guard, but that she has the functional capacity to perform the full range of sedentary work. Because Jenkins had acquired transferable work skills as a security guard and approximately 1000 sedentary security guard jobs existed in the St. Louis area, the Secretary concluded that Jenkins was not entitled to disability benefits under the Social Security Act.

Judicial review of disability determinations is limited to assessing whether there is substantial evidence in the record as a whole to support the Secretary's decision. 42 U.S.C. § 405(g) (Supp.III 1985); *Bogard v. Heckler*, 763 F.2d 361, 362–63 (8th Cir. 1985). This review requires that we take into account evidence which fairly detracts from its weight. *Piercy v. Bowen*, 835 F.2d 190, 191 (8th Cir.1987).

■ Jenkins first argues on appeal that the ALJ's credibility findings concerning Jenkins' subjective complaints were arbitrary and not based on substantial evidence. We are satisfied, however, that the

ALJ properly applied the *Polaski* standards in concluding that certain inconsistencies in Jenkins' testimony allow him to discount her subjective complaints. The ALJ considered such inconsistencies in Jenkins' testimony as vagueness regarding her work as a security guard and when she stopped her work, exaggerated descriptions of her pain which were at times difficult to interpret, and her testimony at the hearing that she could no longer dance when she had earlier told a doctor that she never learned how to dance. Such impressions are factors to be weighed by the ALJ in evaluating subjective complaints of pain. *See Ballowe v. Harris*, 650 F.2d 130, 131 & n. 2 (8th Cir.1981). From such impressions, the ALJ found that Jenkins' testimony concerning her right knee was credible, but that her other complaints of pain were not well documented. We conclude that the ALJ, in considering Jenkins' testimony and its inconsistencies together with the medical evidence and his own observations of her at the hearing, based his determination that Jenkins' pain was not severe enough to be disabling on substantial evidence. *See Benskin v. Bowen*, 830 F.2d 878, 882 (8th Cir.1987).

■ Second, Jenkins relies on *McCoy v. Schweiker*, 683 F.2d 1138, 1146 (8th Cir. 1982) (en banc) to contend that the ALJ erred by relying on the medical-vocational guidelines to deny her claim for disability benefits, because her non-exertional impairments and functional limitations did not precisely match the descriptions in the guidelines. Jenkins further maintains that the ALJ applied the guidelines improperly by characterizing her abilities as transferable skills and including in her list of skills "knowledge of firearms." We conclude, however, that the ALJ properly applied the guidelines in all respects. The guidelines provide a framework to help determine whether a claimant can perform certain types of work. Here, the guidelines were applied to meet the Secretary's burden of showing other work that Jenkins could perform upon the ALJ's determination that she no longer could do her former work. *Cf. Heckler v. Campbell*, 461 U.S. 458, 465, 103 S.Ct. 1952, 1956, 76 L.Ed.2d 66 (1983). We recognize that the guidelines may not be applied where a claimant suffers from non-exertional impairments, such as pain, that significantly limit her ability to perform the full range of work contemplated by the guidelines. *See, e.g., Chitwood v. Bowen*, 788 F.2d 1376, 1377 (8th Cir.1986). The ALJ, however, took full account of the limitations imposed by Jenkins' medical conditions, recognizing her severe obesity and arthritis of the right knee, and determined that these non-exertional impairments would not diminish her ability to do a full range of sedentary work as defined in 20 C.F.R. § 404.1567(a).[2] With the information provided by the vocational expert, we are satisfied that the ALJ did not mischaracterize Jenkins' skills and applied the guidelines properly to conclude that Jenkins possessed certain skills such as knowledge of safety rules and firearms, that these skills were transferable, and that Jenkins is therefore not entitled to disability benefits under the guidelines.

■ Jenkins also argues that the ALJ's hypothetical question to the vocational expert was defective because it failed to "precisely set out the claimant's particular physical and mental impairments." *Simonson v. Schweiker*, 699 F.2d 426, 430 (8th Cir.1983). Jenkins contends that the ALJ should have included in the hypothetical question impairments that were established by medical evidence, such as arthritis in her right knee, degenerative joint disease, lower back pain, and her boil condition. We believe that the hypothetical question adequately set out Jenkins' functional limitations. Examination of the hearing transcript reveals that the ALJ not only stated that Jenkins was restricted to

---

**2.** 20 C.F.R. § 404.1567(a) states:

*Sedentary work.* Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

sedentary work but also stated specifically her limitations regarding bending, squatting, walking, and extensive reading. Furthermore, the vocational expert was present throughout the hearing and was well aware of all Jenkins' impairments which formed the basis for the functional limitations stated by the ALJ in the hypothetical question.

■ Finally, Jenkins contends that the ALJ erred in finding that there are a "significant number" of jobs that Jenkins could perform within the region in which she lives. Jenkins maintains that while vocational expert Smith testified that 1000 sedentary security guard jobs existed in the region, Smith admitted that 500 of these jobs would require Jenkins to use force to restrain unauthorized persons. Only 500 jobs, therefore, would be available to Jenkins. We recognize that once Jenkins established that she was unable to perform her former job, the burden shifted to the Secretary to show that Jenkins can engage in other work which exists in "significant numbers" in the region in which Jenkins lives. 42 U.S.C. § 423(d)(2)(A). We believe, however, that the Secretary has satisfied this burden. According to a Sixth Circuit case, *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir.1988), the court stated:

> A judge should consider many criteria in determining whether work exists in significant numbers, some of which might include: the level of claimant's disability; the reliability of the vocational expert's testimony; the reliability of the claimant's testimony; the distance claimant is capable of travelling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work, and so on. The decision should ultimately be left to the trial judge's common sense in weighing the statutory language as applied to a particular claimant's factual situation.

Here Jenkins has unique skills, has twenty-five years experience as a security guard and is well-qualified to do the sedentary security jobs described by the vocational expert. Accepting Jenkins' contention that only 500 jobs are available to her, we nevertheless believe that this number represents a significant number under these circumstances.

Accordingly, we affirm the district court's order upholding the Secretary's decision to deny disability benefits to Jenkins.