No. 95-3727
_____

Jeanette Johnson,                       *
                                        *
        Appellant,                      *
                                        *   Appeal from the United States
    v.                                  *   District Court for the
                                        *   Eastern District of Arkansas.
Shirley S. Chater,                      *
Commissioner, Social                    *
Security Administration,                *
                                        *
        Appellee.                       *

_____

Submitted:  April 11, 1996

Filed:  July 3, 1996
_____

Before RICHARD S. ARNOLD, Chief Judge, BOWMAN and WOLLMAN, Circuit
    Judges.
_____

WOLLMAN, Circuit Judge.


     Jeanette M. Johnson filed an application for Social Security
disability insurance benefits and Supplemental Security Income (SSI)
benefits on May 19, 1992, with a protective filing date of March 10, 1992.
Her claim was denied both initially and upon reconsideration, and a hearing
was held before an administrative law judge (ALJ), who found that Johnson
was not disabled within the meaning of the Social Security Act.  The
Appeals Council denied review, and the district court[1] granted summary
judgment affirming the denial of benefits.  We find that the ALJ's decision
is supported by the record as a whole, and thus we affirm.

_____

     [1]The Honorable Henry L. Jones, Jr., United States Magistrate
Judge for the Eastern District of Arkansas, to whom this case was
referred for final disposition by consent of the parties pursuant
to 28 U.S.C. § 636(c).

Jeanette Johnson is a thirty-seven-year-old woman who has completed her GED and some college classes. She has worked as a secretary, bookkeeper, hotel manager, and she was working as a receptionist and attending college classes until the time of an automobile accident on February 10, 1992. On that date, Johnson was hit broadside by an uninsured motorist and was taken to the emergency room at St. Bernard's Hospital. She was experiencing pain in her left shoulder, arm, side, leg, and back, which was treated with Tylenol #3, Robaxin, and Toradol, and she was given prescriptions for Tylenol #3 and Robaxin upon her release. X-rays showed no fractures or acute injuries.

Johnson has not worked or attended college classes since the accident. She testified at the hearing before the ALJ that she is unable to work because of a constant stabbing pain in the mid-low back that radiates to her hips, buttocks, legs, neck, shoulders, head and left arm, also causing intermittent numbness in her left middle finger and forefinger. Johnson characterized her pain as so severe that she has difficulty walking more than a block or sitting for more than twenty minutes. She cannot run, jump, bend, lift, kneel, crawl, or climb a ladder. Johnson testified that because she has no money to pay for medication, she uses the free samples that she is given by the medical personnel at Jonesboro Church Health, a clinic that bills patients on the basis of their ability to pay. She takes 800 milligrams of Motrin three times per day, even though she has irritable bowel syndrome and the medicine irritates her stomach. She also uses ice packs for the pain.

The ALJ, following the five-step analysis set out in 20 C.F.R. §§ 404.1520 and 416.920, concluded that Johnson did not have a mental impairment but that she did have a severe combination of physical impairments that included fibromyalgia, obesity, mild endometriosis controlled with medication, hypothyroid controlled

with medication, and minimal, if any, degenerative changes of the lumbar spine.  The ALJ found, however, that the impairments did not meet or equal a listed impairment presumed to be disabling.  The ALJ found that Johnson's subjective complaints of severe and debilitating pain and other symptoms were not credible and that although she could not lift and carry more than twenty-five pounds, she retained the residual functional capacity to perform her past relevant work and thus was not disabled within the meaning of the Act.

Johnson argues on appeal that the ALJ erred in discounting her subjective testimony regarding the severity of her pain, in determining that she had no medically determinable mental impairment, and in ultimately finding that she could perform her past relevant work.

## II.

We will uphold the ALJ's decision to deny benefits if it is supported by substantial evidence on the record as a whole; that is, if a reasonable mind would find the evidence adequate to support the ALJ's conclusion.  Baumgarten v. Chater, 75 F.3d 366, 368 (8th Cir. 1996).  We must consider both evidence that supports and evidence that detracts from the Secretary's decision, but we may not reverse merely because substantial evidence exists for the opposite decision.  Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).

In discounting Johnson's subjective complaints of pain, the ALJ followed the factors set forth in Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).  Under Polaski, the ALJ must consider the claimant's prior work history, as well as any observations by third parties regarding:  (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating

and aggravating factors; and (5) functional restrictions. Id. An ALJ may discount a claimant's subjective complaints of pain only if there are inconsistencies in the record as a whole. Smith v. Shalala, 987 F.2d 1371, 1374 (8th Cir. 1993).

Applying these factors, the ALJ specifically found that although Johnson's consistent work history did not detract from her credibility, it was outweighed by other factors. The ALJ pointed to inconsistencies in the record that detracted from the credibility of Johnson's complaints of pain. After a careful examination of the record as a whole, we find that it supports the ALJ's determination.

The record supports the ALJ's contention that Johnson's sparse use of pain medication does not support her complaints of severe pain. We have held that a claimant's failure to take strong pain medication is "inconsistent with subjective complaints of disabling pain." Haynes v. Shalala, 26 F.3d 812, 814 (8th Cir. 1994). Johnson reported to Dr. Ball in June 1992 that she was taking only about a half tablet of Darvocet at a time for her pain. She also reported to Dr. Stubblefield that she was no longer taking a muscle relaxant and that she was taking about a half tablet of Darvocet only for severe pain. As the ALJ noted, no long-term usage of pain medication has been advised by any treating physician, regardless of Johnson's ability to pay for the medication. Although the ALJ did not explicitly consider Johnson's testimony that she is currently taking Motrin three times per day, her use of a non-prescription medication does not undermine the ALJ's finding.

The strongest support in the record for the ALJ's finding that Johnson is not disabled is the lack of reliable medical opinions to support Johnson's allegations of a totally disabling condition. As the ALJ noted, Dr. Ball and Dr. Stubblefield, Johnson's primary physicians, recommended that Johnson be considered disabled for purposes of HUD eligibility. Those recommendations, however, did

not involve an in-depth analysis but only involved filling out one-page forms. In any event, both doctors contradicted those initial recommendations. On Johnson's last visit to him, Dr. Stubblefield recommended that Johnson seek active employment. Dr. Ball gave Johnson a zero impairment rating based upon the American Medical Association's Guidelines, although he credited her subjective complaints of pain. Where a treating physician's opinion is itself inconsistent, it should be accorded less deference. See Bentley v. Shalala, 52 F.3d 784, 786 (8th Cir. 1995). Although Dr. Lopez indicated his opinion that Johnson's pain prevented her from working, he saw Johnson only one time. The ALJ was entitled to weigh the recommendation of Johnson's treating physicians more heavily than the recommendation of a doctor that Johnson saw only once. See Onstead v. Sullivan, 962 F.2d 803, 805 (8th Cir. 1992).

Although the ALJ correctly found that Johnson's testimony was not corroborated, Johnson submitted the affidavits of two neighbors to the Appeals Council. See 20 C.F.R. § 404.970(b); Box v. Shalala, 52 F.3d 168, 171 (8th Cir. 1995) (Appeals Council must consider additional evidence if new, material, and relating to time period before ALJ's decision). These affidavits corroborate Johnson's testimony that she is in great pain, is unable to work, and that she does not have the money to pay for additional medical treatment. The Appellate Council, however, considered the newly submitted evidence in denying review, and we do not believe that it outweighs the evidence supporting the ALJ's finding.

While it is true that Johnson's daily activities demonstrate some limitations, the ALJ was not required to believe all of her assertions concerning those daily activities. See Benskin v. Bowen, 830 F.2d 878, 883 (8th Cir. 1987). The record shows that Johnson lives independently, does limited grocery shopping with difficulty, drives short distances, attends doctor appointments, maintains a post office box that she checks approximately once a week, does light household chores, cooks meals in a microwave, and

-5-

sews as a therapy for her hand. While these limitations, if accepted as credible, might have supported a disability finding, we will not substitute our opinions for that of the ALJ, who is in a better position to assess a claimant's credibility. See Woolf, 3 F.3d at 1213.

The ALJ found that Johnson misrepresented her medical history in some respects. The ALJ relied on his observation that Johnson falsely reported that she had a cracked sternum. He also relied on a statement in Dr. Ball's notes to the effect that Johnson told him that the physical therapist was reluctant to continue her treatment but that the physical therapist asserted to him (Dr. Ball) that Johnson had refused treatment. With respect to the first alleged misrepresentation, apparently at some point there was the possibility of a hairline fracture in Johnson's sternum. Dr. Ball reported that "the sternum was normal which was of concern on her plain films in regard to a possible hairline fracture." Johnson's physical therapist noted that after the hospital X-rays, Johnson was given the diagnosis of sternal fracture. Dr. Stubblefield also noted that Johnson "was told that she had a hairline crack in the sternum." Accordingly, we find no basis for a finding that Johnson misrepresented that she had a cracked sternum. The ALJ properly relied on Dr. Ball's statement that Johnson had misrepresented her physical therapy, however, to question Johnson's credibility. Again, we will not substitute our opinion as to Johnson's credibility for that of the ALJ. Woolf, 3 F.3d at 1213.

The ALJ found that Johnson did not have a mental impairment. In making this finding, the ALJ relied on the fact that although some of Johnson's other doctors had raised the possibility of a conversion disorder, Dr. Dixon, the only examining mental health professional, stated that he saw no evidence of a conversion disorder. Although Johnson's emotional problems may have exacerbated her physical pain, the evidence is sufficient to support the ALJ's finding that Johnson did not suffer from a mental

impairment.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.