# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 96-2462

_____

Dianna L. Hall,                              *
                                             *
            Appellant,                       *
                                             *      Appeal from the United States
      v.                                     *      District Court for the
                                             *      Eastern District of Arkansas.
Shirley S. Chater, Commissioner              *
of the Social Security                       *
Administration,                              *
                                             *
            Appellee.                        *

_____

Submitted:  December 10, 1996

Filed:  March 24, 1997

_____

Before WOLLMAN, BRIGHT, and MURPHY, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Dianna Hall appeals the district court's[1] order affirming the Commissioner's denial of her application for supplemental security income (SSI) benefits.  We affirm.

**I.**

Hall, who was thirty-seven years old when she filed for benefits, is a high school graduate and has completed college

_____

[1]The Honorable Jerry W. Cavaneau, United States Magistrate Judge for the Eastern District of Arkansas, to whom this case was referred for final disposition pursuant to 28 U.S.C. § 636(c).

coursework in nursing. She has been employed as a parts inspector and sorter, maid, machine operator, and product packer. On July 3, 1991, approximately one month before she filed for benefits, Hall fell eleven feet from a ladder, fracturing her back and left wrist. Hall filed for benefits alleging disability due to her broken wrist and back pain arising from her fall.

In a letter to the Social Security Administration dated January 29, 1992, an orthopedic surgeon who treated Hall after her fall reported that Hall had undergone three surgeries and a bone graft on her left wrist, that the severity of her wrist injuries resulted in reduced motion and weakness, and that he detected what he believed was post-traumatic degenerative arthritis. He stated that the prognosis for her wrist was dismal and predicted that she might experience progressive pain. In regard to Hall's back, he reported that she was treated with a brace and persisted with pain and a progressive kyphotic deformity. He also noted advising Hall that losing weight would be the best treatment for her back.

A physician who treated Hall for her back problems at the University of Arkansas Department of Neurosurgery stated in a clinic note dated February 13, 1992, that Hall was doing well with a brace but experienced persistent back pain, and that films of her lumbar spine showed a progression of collapse of the L1 vertebra. The doctor stated that Hall had point tenderness over the lumbar spine. The only medication noted on Hall's outpatient record was Ibuprofen. Although this physician initially thought Hall would require back surgery, he stated on March 12, 1992, that her condition had stabilized and surgery was not anticipated.

A hearing was held before an administrative law judge (ALJ) on October 6, 1992. Hall demonstrated that she could barely bend her left wrist or the fingers on her left hand. Hall testified that

she still wears a back brace every day, and has a heavier one for "the days it gets really bad." Her daughter has to help her fasten buttons and zippers when she gets dressed and assist her in bathing. Hall performs light housework and cooking, but hires someone to do heavy cleaning twice a month and needs help lifting heavy pots. Hall claimed that she has to lie down approximately once per hour during the day to alleviate her back pain, but reported that a heating pad and Ibuprofen would also alleviate that pain.

The ALJ called a vocational expert (VE) at the hearing. The hypothetical the ALJ posed to the VE involved a worker who had difficulty with prolonged sitting and standing and needed to alternate between these positions hourly, was severely limited in the use of her left hand but could use it as a helper hand, and could lift up to 30 or 40 pounds occasionally and 20 pounds frequently with her good arm. The VE opined that this worker could not perform her past relevant work but retained the residual functional capacity to perform unskilled sedentary work, including clerk, receptionist, and cashier jobs.

The ALJ found that although Hall was severely impaired, she did not meet the requirements of a listed impairment. Relying on the VE's testimony, the ALJ concluded that Hall's impairments precluded her from performing her past relevant work but that she could perform other jobs available in significant numbers. The Appeals Council denied Hall's request for review, and the district court granted the Commissioner's motion for summary judgment. On appeal, Hall argues that the ALJ erred in discounting her subjective complaints of pain and in concluding that a significant number of jobs exist that she could perform.

**II.**

Our review is limited to determining whether the Commissioner's decision is supported by substantial evidence on the record as a whole; that is, evidence sufficient to allow a reasonable mind to find it adequate to support the Commissioner's conclusion. See Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996). We will not reverse the Commissioner's decision simply because there is evidence supporting a different result. See id. If the evidence supports two inconsistent conclusions, one of which is that reached by the Commissioner's conclusion, we must affirm the decision. See Roe v. Chater, 92 F.3d 672, 675 (8th Cir. 1996).

Hall argues that the ALJ erred in discounting her complaints that she experiences disabling pain and needs to lie down frequently during the day. She contends that the ALJ would have found her unemployable, had he properly credited her testimony and the testimony of her witnesses.

The ALJ made express credibility findings and stated his reasons for those findings in accord with Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). He carefully reviewed the medical evidence and found that it supported Hall's assertion that she experienced pain but did not support the degree of functional limitation and pain she alleged. He also noted that Hall sought no medical treatment for her wrist after January of 1992, no treatment for her back other than her brace, and no physical therapy for either her wrist or back. In addition, Hall did not show that she had attempted to lose weight to improve her condition as her orthopedic surgeon had recommended. The ALJ also found that Hall's description of her daily activities, including cooking, light housework, grocery shopping, and driving an automobile, contradicted her assertions that she could walk or stand only for a short amount of time and had to lie down once every hour.

The ALJ additionally noted that Hall did not take strong pain medication, a factor that may belie subjective complaints of pain. <u>See Johnson</u>, 87 F.3d at 1017. Hall contends that she failed to take stronger medication because of its sleep-inducing effect and because of her fear of becoming addicted. Her own testimony that her pain was relieved by Ibuprofen and a hot pad, however, contradicts a need for prescription medication to alleviate her pain.

After reviewing the entire record, we are satisfied that the ALJ's determination of Hall's credibility was based on substantial evidence, properly rooted in inconsistencies between Hall's testimony and the record as a whole. <u>See Polaski</u>, 739 F.2d at 1322. We recognize that the orthopedic surgeon's letter predicted that Hall might experience progressive pain, but evidence in the record also supports the conclusion that she did not endure a degree of pain or functional limitation supporting the award of benefits. We will not reverse as long as the evidence adequately supports the Commissioner's conclusion. <u>See Roe</u>, 92 F.3d at 675.

Likewise, we are satisfied that the ALJ's conclusion that the testimony of Hall's witnesses was unreliable because it was motivated in part by their desire that Hall receive benefits and was in conflict with the overall evidence in the record is supported by substantial evidence. <u>See Brown v. Chater</u>, 87 F.3d 963, 966 (8th Cir. 1996) (ALJ may discredit suspect testimony of witnesses).

Hall next argues that the ALJ failed to establish the existence of a significant number of jobs that Hall could perform, contending that she could not perform most jobs the VE identified. Since Hall cannot perform her past relevant work, the Commissioner bears the burden of showing that Hall could perform jobs that exist in significant numbers. See Cruze v. Chater, 85 F.3d 1320, 1322 (8th Cir. 1996). We ultimately leave to the trial judge's common sense the application of the significant numbers requirement to a particular claimant's factual situation. See Johnson v. Chater, No. 96-2614, slip op. at 5 (8th Cir. Mar. 6, 1997); Long v. Chater, No. 96-2048, slip op. at 6 (8th Cir. Mar. 6, 1997); Jenkins v. Bowen, 861 F.2d 1083, 1087 (8th Cir. 1988). Factors the trial judge should consider include the level of the claimant's disability, the reliability of both the claimant's and the VE's testimony, and the types and availability of work that the claimant could perform. See Jenkins, 861 F.2d at 1087. The ALJ considered Hall's particular impairments and abilities along with the VE's testimony, and determined that a significant number of jobs existed that Hall could perform. We find that the ALJ's determination is supported by substantial evidence in the record.

The VE listed 218 order clerk jobs and 122 information clerk jobs in Arkansas that he believed Hall could perform. Hall cites the U.S. Department of Labor's Dictionary of Occupational Titles[2] (DOT) and a supplement thereto,[3] for the proposition that these

---

[2]U.S. Dep't of Labor, Employment & Training Admin., Dictionary of Occupational Titles (4th ed. 1991).

[3]U.S. Dep't of Labor, Employment & Training Admin., Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (1993).

jobs all require reaching, handling, or finger work. Hall's reliance on the DOT as a definitive authority on job requirements is misplaced, however, for DOT definitions are simply generic job descriptions that offer "the approximate maximum requirements for each position, rather than their range." Jones v. Chater, 72 F.3d 81, 82 (8th Cir. 1995); see also Roe, 92 F.3d at 678 n.8. The DOT itself cautions that its descriptions "'may not coincide in every respect with the content of jobs as performed in particular establishments or at certain localities.'" Roe, 92 F.3d at 678 n.8 (quoting Dictionary of Occupational Titles, vol. 1, at xiii). In other words, not all the jobs in every category have requirements identical to or as rigorous as those listed in the DOT. We are satisfied that Hall could perform a number of jobs within the categories the VE listed, despite her impairments.

Furthermore, the record supports the conclusion that Hall could perform these jobs even as described in the DOT. No evidence in the record suggests that Hall's ability to reach is significantly limited. Hall concedes that her left hand could be utilized as a helper hand for handling light objects. Although Hall could not perform finger work with her left hand, she could utilize her good right hand for tasks requiring finger work. Even if we adopt the DOT descriptions of the clerk jobs, therefore, we are satisfied that Hall could perform them.

The VE also listed 1,045 receptionist jobs in Arkansas, stating that Hall could perform most with the use of only one hand, but that her need to alternate sitting and standing would eliminate some of them. He listed 5,227 cashier jobs, but stated that Hall's "difficulty with the [left] hand would preclude a majority of them," and that he had "never seen a cashier sitting." Hall argues that because many of these jobs would be precluded by her need to alternate between sitting and standing or her inability to use her

left hand, as the VE conceded, they fail to constitute a significant number.

The testimony elicited from the VE regarding the number of receptionist and cashier jobs that would accommodate Hall's impairments could have been more precise. We are satisfied, however, that the receptionist and cashier jobs that would actually accommodate Hall, when added to the 218 order clerk and 122 information clerk jobs, constitute a significant number of jobs available to Hall. Cf. Jenkins, 861 F.2d at 1083 (500 jobs in claimant's region constitutes significant number). The VE's somewhat inexact language regarding the receptionist and cashier jobs does not undermine this conclusion, as the VE's testimony in its entirety reveals that he was not hedging or exaggerating the number of jobs available to Hall, but merely acknowledging that some particular jobs in the categories he listed might be precluded. See Long, slip op. at 6. There is no evidence to give us pause in concluding that the ALJ used common sense in applying the significant numbers requirement to Hall's particular factual situation. See Johnson, slip op. at 5; Long, slip op. at 6; Jenkins, 861 F.2d at 1087. We conclude that the Commissioner met her burden and that her conclusion is supported by substantial evidence.

The judgment is affirmed.

BRIGHT, Circuit Judge, dissenting.

I respectfully dissent. The ALJ's findings which have been approved by the district court and by the majority are erroneous.

First, the ALJ erroneously discounted Hall's subjective complaints of pain solely because she refused to take prescription pain relievers. Although, functioning without such medication may contradict complaints of pain, Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996), legitimate reasons exist for refusing medication and coping with the pain. In Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984), this court instructed adjudicators to consider the side effects of medication before discounting complaints of pain. Id. at 1322, quoted in Johnson, 87 F.3d at 1017. Indeed, continued use of prescription-strength pain relievers increases the risks of side effects such as bleeding ulcers and addiction. See, e.g., J.E. Schmidt, Attorneys' Dictionary of Medicine A-276 (1997) (describing side effects of prolonged treatment with ansaids); id. at C-268 (defining codeine as derivative of opium and habit-forming).

The Commissioner offered no evidence disputing Hall's statement that she refused to take stronger medicine because of its sleep-inducing effect and fear of addiction. The majority states that Hall's "testimony that her pain was relieved by Ibuprofen and a hot pad . . . contradicts a need for prescription medication to alleviate her pain." Maj. op. at 4. I disagree. Using over-the-counter pain relievers and heating pads constitutes a legitimate method of pain control, without entirely relieving pain, for people who choose to avoid the risks and side effects associated with stronger medications. It is a common experience that people, such as Hall, will rely on heating pads and over-the-counter medicine and forego the relief of stronger medications. Indeed, heavy pain medications may often prove ineffective. Hall's decision to avoid the side effects of prescription-strength pain relievers in no way contradicts her claims of pain. Thus, I believe the record lacked substantial evidence to support the ALJ's decision to discount Hall's subjective complaints of pain.

Second, the evidence fails to support the ALJ's conclusion that a significant number of jobs that Hall could perform exist in the economy. The Commissioner bears the burden of demonstrating that a significant number of jobs exist that Hall could perform. See Johnson v. Chater, No. 96-2614, 1997 WL 94016, *2 (8th Cir. (Iowa) Mar. 6, 1997). To meet this burden, the Commissioner can rely on the testimony of a vocational expert, Long v. Chater, No. 96-2048, 1997 WL 94021, *3 (8th Cir. (Iowa) Mar. 6, 1997) who must "determine whether jobs exist for someone with the claimant's precise disabilities." Montgomery v. Chater, 69 F.3d 273, 277 (8th Cir. 1995) (quoting Jelinek v. Bowen, 870 F.2d 457, 459 (8th Cir. 1989)). In addition, this court recently recognized a distinction between testimony from a vocational expert indicating that he "was hedging or giving qualified responses[,]" and testimony that merely demonstrates awareness that he was addressing hypothetical questions. Long, 1997 WL 94021, *3.

In Hall's case, the vocational expert merely cited raw numbers of available jobs without specifying how many of those jobs Hall could perform based on her precise disabilities. Furthermore, the expert hedged and offered qualified responses because he acknowledged that her disabilities would "preclude a majority" of those jobs, and stated that her limitations would "drastically reduce" the numbers he used to reflect available jobs in the economy. Tr. at 62-66. Merely identifying large numbers of available jobs without specifying how many of those jobs a claimant could perform is insufficient to meet the Commissioner's burden.

The majority recognizes that "[t]he testimony elicited from the [vocational expert] . . . could have been more precise[,]" but concludes that the expert's qualified testimony combined with 340 available jobs constitutes a significant number. Maj. op. at 7. The majority relies on Jenkins v. Bowen, 861 F.2d 1083, 1087 (8th Cir. 1988), to support its conclusion. In Jenkins, however, this

-10-

court decided 500 <u>security</u> jobs constituted a significant number in light of the claimant's <u>twenty-five years of security experience</u>. <u>Id.</u> Hall does not have such experience. I believe relying upon <u>Jenkins</u> for establishing a minimum significant number is improper.

In sum, the ALJ erroneously discounted Hall's complaints of pain because of her refusal to take prescription pain relievers and the Commissioner failed to meet her burden of demonstrating that Hall could perform a significant number of available jobs in the economy. The record establishes Hall as severely disabled and entitled to disability benefits.

I would, therefore, reverse and remand the case to the district court with instructions that it require respondent Chater to grant disability benefits to Hall.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.