United States Court of Appeals
FOR THE EIGHTH CIRCUIT

_____

No. 96-2741

_____

| | | |
|---|---|---|
| Julie Gallus, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| John J. Callahan,[1] Acting Commissioner | * | |
| of Social Security, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted:  March 13, 1997

Filed:  June 26, 1997

_____

Before WOLLMAN and BEAM, Circuit Judge, and REASONER,[2] District Judge.

_____

---

[1]John J. Callahan was appointed to serve as Acting Commissioner of Social Security effective March 1, 1997.  Therefore, the court has substituted John J. Callahan for Shirley S. Chater pursuant to Fed. R. App. P. 43(c).

[2]The HONORABLE STEPHEN M. REASONER, Chief Judge, United States District Court for the Eastern District of Arkansas, sitting by designation.

WOLLMAN, Circuit Judge.

Julie Gallus appeals the district court's[3] order affirming the Commissioner's denial of her application for disability insurance benefits. We affirm.

**I.**

Gallus is a high school graduate and has employment experience as a plastics handler, machine tender, control line person, assembler, and direct laborer, but has been unemployed since February of 1990. Gallus met the insured status requirement for entitlement to disability insurance benefits until June 30, 1994.

Gallus, who was then thirty-three, filed for benefits on March 3, 1993, claiming that she became disabled in February of 1990 as the result of a number of alleged impairments, including mitochondrial myopathy, bilateral patellofemoral syndrome, right shoulder impingement syndrome, hypertension, and depression.[4] Gallus maintains that muscle pain, weakness, and fatigue prevent her from working. She asserts that although she can occasionally lift up to twenty pounds, she can only walk a distance of up to a third of a block, can stand for only ten minutes at a time, and can sit for only two hours at a time. In addition, she claims that her hands cramp up when she is cooking and doing needlepoint and that she has balance and dizziness problems.

The administrative law judge (ALJ) concluded that although Gallus's mitochondrial myopathy and patellofemoral syndrome constituted severe impairments,

---

[3]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota, adopting the report and recommendation of the Honorable Raymond L. Erickson, United States Magistrate Judge for the District of Minnesota.

[4]Mitochondrial myopathy is an inherited, progressive muscle disorder. The Merck Manual, p. 1527 (16th ed. 1992). Patellofemoral syndrome is commonly referred to as "runner's knee." Id. at 2559.

they did not meet the relevant criteria for any listed impairment. The ALJ also determined that any impairment resulting from right shoulder impingement syndrome and hypertension was not severe, and that Gallus's alleged depression was not a medically determinable mental impairment. Accordingly, the ALJ found that Gallus's impairments prevented her from returning to her past relevant work but that she retained the residual functional capacity for work that would not require her to use her hands repetitively, to lift no more than twenty pounds occasionally and no weight frequently, to walk and stand only briefly, and to sit no more than two hours at a time with the opportunity to rest for fifteen minutes in between. Based upon the hypothetical question presented to the vocational expert (VE), the ALJ concluded that there were a significant number of jobs Gallus was capable of performing. The Appeals Council denied Gallus's request for review, and the district court granted the Commissioner's motion for summary judgment.[5]

---

[5]At oral argument, we granted Gallus leave to file a motion to remand for consideration of new evidence. Gallus argues that her award of Supplemental Security Income disability benefits on May 8, 1996, an assessment of her mental impairments made by the Social Security Administration and its consultant in September of 1996, and a psychiatric consultative examination performed on August 16, 1996, constitute new evidence entitling her to remand.

We may remand for reconsideration based on new evidence only upon a showing that it is "material and that there is good cause for the failure to incorporate such evidence in the record in a prior proceeding." 42 U.S.C. § 405 (g). The evidence must not be "'merely cumulative of what is already in the record,'" and must be material -- both "relevant to the claimant's condition during the time period for which benefits were denied and probative." Jones v. Sullivan, 949 F.2d 57, 60 (2d Cir. 1991) (citation omitted). None of this evidence pertains to Gallus's physical or mental state at the time she filed for benefits or during the period that she was insured and is therefore irrelevant in determining whether she was disabled at any time before June 30, 1994. Accordingly, we deny Gallus's motion for remand.

## II.

Our review consists only of determining whether the Commissioner's decision is supported by substantial evidence on the record as a whole. See Lawrence v. Chater 107 F.3d 674, 676 (8th Cir. 1997). Substantial evidence exists if a reasonable mind would find it adequate to support the determination. See id. So long as there is evidence supporting the Commissioner's determination, we will affirm, even though there may be evidence supporting an opposite result. See Hall v. Chater, 109 F.3d 1255, 1258 (8th Cir. 1997).

Gallus first argues that the ALJ's decision is not supported by substantial evidence because he failed to recognize the progressive nature of her impairments. Although mitochondrial myopathy is a progressive muscle disorder, Dr. LaBree, a specialist in internal medicine who reviewed Gallus's medical records in his capacity as a consultant to the Office of Hearings and Appeals, testified that "it doesn't necessarily become crippling over time" and that it "may become worse." Gallus claims that Dr. LaBree found that her disease was "progressing, developing," but Gallus has taken this statement out of context. Dr. LaBree found the disease was "progressing, developing" because test results in 1992 revealed no myopathy, while test results in 1993 showed minor mitochondrial abnormalities. There is no evidence, other than Gallus's subjective complaints, that her disease had actually progressed or worsened since its original diagnosis in June of 1993, and speculation that a disease may become worse, without more, is not sufficient to show that Gallus was at the time disabled. See Hall, 109 F.3d at 1258 (prediction that claimant might experience progressive pain not sufficient to overcome supported conclusion that claimant was not then entitled to benefits).

There is substantial evidence to support the ALJ's finding that Gallus was not disabled at any time since 1990. Between April of 1990 and June of 1992, Gallus was seen by a number of doctors, all of whom were of the opinion that Gallus could work within certain limitations. Despite Gallus's claims that she had become very limited in her daily functions, there was substantial evidence contradicting those assertions.

-4-

For instance, in the daily-living questionnaire section of her application for disability, filed on March 22, 1993 (three years after she claims she first became disabled), Gallus indicated that she could drive, cook, clean, do yard work and repairs, and bathe and groom herself. In addition, in her disability report, she indicated that she vacuumed, washed clothes, shopped, and did handy work. She also stated that her hobbies included playing with her pets, taking care of her horse, gardening, target shooting, and taking care of her car.

Similarly, a doctor's report in May of 1993 revealed that Gallus was still engaging in a number of activities that tended to rebut her complaints. Gallus reported that a typical day would consist of feeding her horse, picking up bales of hay, clearing weeds from under a fence, raking, washing dishes, vacuuming, doing the laundry, baking, and cooking. Gallus stated that after supper, she would continue to work outside, feeding her horse, playing with her cat, and raking.

Gallus's assertion that the progression of the mitochondrial myopathy has since rendered her disabled is likewise not supported in the record, for even after the mitochondrial myopathy was diagnosed, Gallus engaged in activities which contradict her subjective complaints. At the time of her hearing, on January 13, 1994, Gallus testified that she was still caring for horse by feeding him grain, by throwing hay over the fence, and by watering and brushing him. In addition, she was still able to carry firewood into her house.

Because Gallus's subjective complaints are contradicted by her level of daily activities, the ALJ properly discredited those complaints. See Lawrence, 107 F.3d at 676-77. Accordingly, we find that substantial evidence supports the ALJ's conclusion that Gallus's impairments did not render her disabled at any time during which she met insured status.

Gallus next argues that the ALJ substituted his unsupported medical judgment for that of medical professionals. Gallus contends that the ALJ disregarded medical opinions regarding the effects of mitochondrial myopathy by ignoring Dr. LaBree's opinion that Gallus was incapable of doing sustained activity and that she could work for only one hour before she would require fifteen minutes' rest. Dr. LaBree's opinion regarding Gallus's ability to perform sustained activity, however, was merely an exclusion of work which would require Gallus to perform repetitive tasks. Dr. LaBree did not rule out jobs in which Gallus would not have to use her hands repetitively, and he concluded that with rest Gallus could sustain an eight-hour employment period. Although Dr. LaBree testified that Gallus should rest after every hour of work, Gallus herself testified that she could sit for two hours at a time before needing to shift or stand. Gallus's assertion that the ALJ substituted his judgment that she could lift twenty pounds occasionally for Dr. LaBree's opinion limiting her to only ten pounds is likewise without merit, given Gallus's admission that she could lift twenty pounds occasionally. We therefore find the ALJ's conclusions are adequately supported by the evidence.

Gallus's contention that the ALJ disregarded Ms. Cathy Skrip's opinion regarding her depression is likewise without merit. Ms. Skrip, a licensed psychologist, concluded that Gallus had a depressive disorder, not otherwise specified. Ms. Skrip's evaluation also revealed, however, that Gallus's thinking was relevant, coherent, and generally goal directed, and that she was in touch with reality. Ms. Skrip noted no problems regarding Gallus's concentration, memory, judgment, or insight. Ms. Skrip summarized Gallus's work-related abilities by stating that Gallus would be able to understand and concentrate on verbal or demonstrated instructions, but would have difficulty with written and complicated instructions; that she would probably relate well to co-workers and supervisors, but might not always respond appropriately due to her tendency to ramble; and that she could tolerate a fair amount of stress on the job. Ms. Skrip also surmised that Gallus would not be able to carry out tasks with reasonable persistence or pace. That this latter conclusion, however, was based on Gallus's

subjective complaint that she has trouble pouring water through a coffee filter and in brushing her teeth, a complaint contradicted by Gallus's level of daily activities.

Moreover, a number of other examinations also indicate the absence of any mental impairment. Dr. Haberle, a reviewing psychiatrist, evaluated Gallus in May of 1993 and determined that she had no medical determinable mental impairment. Dr. Henze, a licensed psychologist, stated that Gallus's affect and mood appeared normal, and reported that when asked, Gallus stated that she was in an "I don't care mood--not depressed, but not happy either." Although Dr. Henze found that Gallus might not always respond appropriately to co-workers and supervisors, considering her extensive, rambling answers, he also found that Gallus had the ability to concentrate on and understand instructions and to work with considerable persistence and at an adequate pace. Dr. Henze's overall opinion was that Gallus did not appear to have an emotional disorder. Still another doctor, who evaluated Gallus in October of 1993, concluded that Gallus seemed to cope well and did not appear to be depressed.

Finally, Gallus contends that the ALJ's hypothetical question to the VE failed to include Gallus's inability to sustain work activity. As explained above, however, Dr. LaBree's testimony was not that Gallus could not perform sustained activity but that she could not do repetitive work, a factor that was included in the hypothetical. Gallus's assertion that the ALJ should have included factors such as her problems with alertness, concentration and fatigue is likewise unpersuasive. As indicated above, the evidence does not support a finding that Gallus had problems with her alertness or concentration, and the ALJ took Gallus's fatigue into account in presenting the hypothetical by stating that she would have to rest for fifteen minutes after every two hours of work. Moreover, since substantial evidence supports the ALJ's finding that any depressive disorder suffered by Gallus was not a severe impairment, the ALJ appropriately did not include that impairment in the hypothetical. See Haynes v. Shalala, 26 F.3d 812, 815 (8th Cir. 1994) ("A hypothetical question need only include those impairments that the ALJ accepts as true.").

The judgment is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.