# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 02-2314

_____

Tiffany N. Osborne,      *

     *

     Appellant,      *

     *      Appeal from the United States

v.      *      District Court for the Eastern

     *      District of Missouri

Jo Anne B. Barnhart,      *      [TO BE PUBLISHED]

Commissioner of Social Security,      *

     *

     Appellee.      *

_____

Submitted: November 4, 2002

Filed: January 21, 2003

_____

Before McMILLIAN and MELLOY, Circuit Judges, and LONGSTAFF[1], District Judge.

_____

_____

[1] The Honorable Ronald E. Longstaff, Chief Judge, United State District Court for the Southern District of Iowa, sitting by designation.

LONGSTAFF, District Judge.

Tiffany N. Osborne appeals from the district court's[2] order affirming the decision of the Commissioner of Social Security to deny her application for Supplemental Security Income ("SSI") benefits. We affirm.

I.      Background

Tiffany Osborne alleges she is entitled to SSI benefits due to borderline intelligence and depression. The record shows that Ms. Osborne, now 24 years old, has an IQ in the upper 70s. She attended special education classes throughout her educational history, and dropped out of school after the eleventh grade. Although Ms. Osborne participated in a state vocational rehabilitation program, she has never engaged in substantial work activity.

Ms. Osborne applied for SSI on October 1, 1996, and was denied benefits at both the initial and reconsideration levels. She then requested, and was granted, a hearing before an administrative law judge ("ALJ"). During the hearing, which was held on February 4, 1998, Ms. Osborne testified that she had no friends other than her cousin, and liked to go to movies for entertainment. Her mother testified that her daughter had attempted to obtain a drivers license on several occasions, but did not score high enough on the written examination to obtain the license. She confirmed that her daughter seldom left the house, socializing only with Ms. Osborne's cousin.

The ALJ adjourned the hearing to enable Ms. Osborne to undergo a comprehensive psychological evaluation, including the administration of the Minnesota Multiphasic Personality Inventory ("MMPI") and the Beck Depression

---

[2] The Honorable Rodney W. Sippel, United States District Judge for the Eastern District of Missouri, adopting the report and recommendation of the Honorable Mary Ann Medler, United States Magistrate Judge.

Inventory. Ms. Osborne subsequently was seen in March 1998 by Lynn Hyland, M.A., a psychological examiner, and Robert Harris, Ph.D., a psychologist. Although an MMPI-2 was administered, Dr. Harris considered the results invalid due to extreme inconsistencies in Ms. Osborne's responses. Her Beck Depression Inventory score was 44, which would suggest severe depression. The examiner felt Tiffany's presentation was a "more mild, dysthymic condition," however.

Ms. Osborne was then evaluated on May 1, 1998 by psychiatrist Stacey L. Smith, M.D. Ms. Osborne was very passive during the interview, but did not appear to Dr. Smith as having any difficulty understanding her. Dr. Smith opined that Ms. Osborne was a malingerer for financial benefit, with dependent and antisocial personality traits. Dr. Smith further opined that Ms. Osborne had a "fair" ability to perform the following: obey work rules; relate to co-workers; deal with the public; use judgment; interact with supervisors; deal with work stresses; function independently; maintain attention and concentration; understand, remember, and carry out simple job instructions; maintain personal appearance; behave in an emotionally stable manner; react predictably in social situations; and demonstrate reliability. Ms. Osborne had "poor" ability to understand, remember, and carry out detailed job instructions. Overall, Dr. Smith believed Ms. Osborne was functioning at a higher level than that she displayed in her office.

A supplemental hearing was held in August 1998. During this hearing, the ALJ asked Ms. Osborne's mother whether she believed her daughter was depressed. Mrs. Moore replied: "Well, I would say at times, yes, she gets depressed, but we don't have any insurance, you know, and that's my reason why I haven't taken her to the doctor."

The ALJ then posed a hypothetical question to the vocational expert that assumed an individual of Ms. Osborne's age and educational level, who was limited to low-stress, simple, repetitive and routine work and had no prior work history. The vocational expert testified that such an individual could work as an office cleaner,

3

hand packer, stock handler, product inspector and usher.  The ALJ then added the limitation that such an individual could not work in jobs "requiring much contact with the public." The vocational expert testified that such an individual could not work at all in the usher occupations, and only in a reduced number of stock handler and office cleaner positions.

The ALJ then asked the vocational expert to assume that the individual would require a "very supportive supervisor, " which prompted the vocational expert to respond that he could still identify jobs in the "open labor market."  Specifically, the vocational expert testified that such an individual could perform 5,400 cleaning and janitorial jobs, 390 packer and wrapper jobs, "no less than 1,000 " jobs as a stock handler, and 3,000 assembler jobs.

II.    DISCUSSION
"Our role on review is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole."  Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion."  Johnson v. Chater, 108 F.3d 942, 943 (8th Cir. 1997).  In reviewing the Commissioner's final decision, this Court should consider evidence favoring an award of benefits, as well as evidence detracting from an award.  See Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000).  If, however, after reviewing the record, we find that "'it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Commissioner's] findings, we must affirm the decision'" of the Commissioner.  Roth v. Shalala, 45 F.3d 279, 282 (8th Cir. 1995) (quoting Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992)).

On appeal, Ms. Osborne contends the ALJ erred in relying on the failure to seek mental health treatment as a basis for concluding Ms. Osborne was not depressed. We disagree.

As set forth above, although Ms. Osborne's mother cited "lack of insurance" as a reason for not pursuing mental health treatment for her daughter, there is no evidence either Ms. Osborne or her mother attempted to obtain treatment, and were denied such treatment because of insufficient funds or insurance. See, e.g., Riggins v. Apfel, 177 F.3d 689, 693 (8th Cir. 1999) (ALJ appropriately discounted claimant's argument he could not afford medical care absent evidence he sought and was denied low-cost or free care); Johnson v. Bowen, 866 F.2d 274, 275 (8th Cir. 1989) (although lack of funds may sometimes justify failure to seek medical care, there was no evidence plaintiff had told his physicians he could not afford the prescription at issue and was denied the medication).

Furthermore, the medical evidence contradicts a diagnosis of severe depression. Although Ms. Osborne's score on the Beck Depression Inventory was admittedly within the range of depression, both the examiner who administered the Inventory and consulting psychiatrist Smith believed Ms. Osborne functioned at a much higher level than the score would indicate. In fact, Dr. Smith went so far as to label Ms. Osborne a malingerer. Substantial evidence on the record as a whole supports the ALJ's decision that Ms. Osborne was not depressed.

Ms. Osborne also contends the Commissioner failed to meet her burden to prove a significant number of jobs existed that Ms. Osborne could perform. In support of this argument, Ms. Osborne points to testimony from the vocational expert that additional restrictions imposed by the ALJ–which later were adopted in his residual functional capacity findings–significantly reduced the number of jobs originally cited. For example, the vocational expert testified that the ALJ's statement that Ms. Osborne would need a very supportive supervisor would reduce the number

5

of cited jobs by 90%, leaving 6,400 of the original 64,000 jobs cited. The vocational expert added to these jobs 3,000 assembly jobs, however, bringing the total to 10,000. Assuming these numbers represent the available jobs in Missouri,[3] these numbers far exceed levels the Eighth Circuit has considered sufficient to constitute a "significant number." See, e.g., Hall v. Chater, 109 F.3d 1255, 1259 (8th Cir. 1997) (340 jobs in state that would actually accommodate claimant's restrictions considered significant); Jenkins v. Bowen, 861 F.2d 1083, 1087 (8th Cir. 1988) (500 jobs in region considered significant).

Ms. Osborne also notes that after considering additional restrictions related to her alleged depression that were posed by her counsel during the second hearing,[4] the vocational expert did conclude the hypothetical individual would be restricted to a sheltered work environment. The ALJ never adopted these limitations in his findings, however, and concluded Ms. Osborne's depression was not severe. Substantial evidence in the record as a whole supports this latter conclusion.

Accordingly, the judgment of the District Court is affirmed.

A true copy.

Attest:

---

[3] Although the geographical region upon which the vocational expert is relying is not entirely clear in his testimony, he does make one reference to "statewide."

[4] Specifically, plaintiff's attorney asked the vocational expert to assume an individual with a GAF of 50, which is indicative of "serious symptoms" or "any serious impairment in social, occupational, or school functioning." Diagnostic & Statistical Manual of Mental Disorders 32 (4th ed. 1994) ("DSM-IV").

6