**Ted V. JIMENEZ, Plaintiff,**

v.

**Donna E. SHALALA, Secretary of Health and Human Services, Defendant.**

**Civ. A. No. 94–K–1017.**

United States District Court, D. Colorado.

March 29, 1995.

Ruth K. Vogel–Irwin, Boulder, CO, for plaintiff.

Chalk Mitchell, Asst. U.S. Atty., Denver, CO, for defendant.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

This is a case for judicial review of the final administrative action of the Secretary of Health and Human Services ("Secretary") denying Ted V. Jimenez Social Security Disability Insurance (disability) benefits and Supplemental Security Income (supplemental) benefits under Title II and XVI of the

Social Security Act, 42 U.S.C.A. §§ 401–433, 1381–1383c.

By relying mainly on inconclusive expert testimony to a flawed hypothetical, the Administrative Law Judge ("ALJ") did not base his decision on substantial evidence. In addition, the ALJ incorrectly analyzed Jimenez's residual functional capacity (residual capacity), thereby failing to show Jimenez could work at a significant number of jobs in the economy.

## I. *Background*

### A. *Procedure*

The Department of Health and Human Services' Social Security Administration denied Jimenez' applications for disability insurance benefits and Supplemental Security Income benefits (security benefits) in June 1992 and again upon reconsideration in October 1992. A February 1993 hearing followed before an ALJ, which included vocational expert testimony and a post-hearing vision exam. The ALJ denied the benefits in September 1993, finding Jimenez retained a residual capacity to perform a substantial number of jobs.

After additional legal argument, the Appeals Council, Office of Hearings and Appeals, Social Security Administration, declined to review the ALJ's decision in March 1994, making the ALJ's ruling the Secretary's final decision. Jimenez filed his complaint for judicial review of the Secretary's decision, and specifically the ALJ's ruling, with this court in April 1994.

### B. *Facts*

Jimenez was born February 3, 1948 and was forty-five years old at the time of his hearing before the ALJ. He was a deliveryman in the beer industry for most of the 17 years before November 1991 when he lost his job. Thereafter, he discovered his disabilities prevented him from being hired and he filed for disability and security benefits.

Legally blind in his left eye since birth, Jimenez had 20/20 corrected vision in his right eye. Between 1989 and 1992 his eyesight apparently worsened to 20/25 corrected and he suffered from borderline high pressure in his functioning eye. (Record of Proceedings Transcript (Tr.) at 208.) Though he still drives, Jimenez cannot pass the vision test for a commercial license which the state began to require for delivery truck drivers in 1991 and 1992. (Tr. at 80.) The ALJ found Jimenez' vision places further practical limitations: his right eye tires easily and becomes painful after more than 20 minutes of staring at something, it blurs for two to three seconds without notice four to five times per week, and it prevents him from doing night work. (Tr. at 24, 27.)

Jimenez' back impairments created more controversy. The ALJ found Jimenez has "severe degenerative disc disease." (Tr. at 28.) The parties dispute Jimenez' level of back pain and what the pain means he can or cannot do. The ALJ acknowledged Jimenez has pain. (Tr. at 29.) He found Jimenez can generally sit for five to ten minutes and periodically for thirty minutes at a time. (Tr. at 27.) Specifically, this means two half-hour sits in the morning, two half-hour sits in the afternoon and a total of four sitting hours in the work day. (Tr. at 27.) Further, he found Jimenez can be on his feet for two thirty minute intervals in both the morning and afternoon. (Tr. at 27.) Other segments of ten to fifteen minutes of standing or walking would give Jimenez an accumulation of four hours on his feet in the workday. (Tr. at 27.)

The ALJ's calculated addition produced a finding that Jimenez can work a sedentary job with a sit/stand option. (Tr. at 29.)

The ALJ further found Jimenez cannot do his past work and that he has no transferable skills. (Tr. at 29.) The ALJ found Jimenez, apparently in rightful possession of a high school diploma, has lower than average reading, writing and math skills and is "not very efficient" at reading a magazine, writing letters to friends or making change. (Tr. at 27, 29.) He also found Jimenez only could do unskilled work requiring no more than one or two-step instructions. (Tr. at 27.)

At the hearing the ALJ described Jimenez' education as equivalent to approximately a tenth or eleventh grade level. (Tr. at 94.) A vocational testing by Re Entry Vocational Services, Inc. of Lakewood, Colorado, howev-

er, revealed more limited academic abilities. "Ted's test results indicate that he has seventh grade level of arithmetic ability, a fifth grade level of reading recognition, and a fourth grade level of reading comprehension and spelling ability." (Tr. at 207).

The parties disagree about the significance of a great many facts surrounding Jimenez' pain, particularly those reflecting his sitting and standing thresholds. The ALJ noted Jimenez said he could stand in one place for only fifteen minutes, but also testified he could walk four miles daily with an hour of standing around after walking each mile. (Tr. at 25.) The ALJ found Jimenez' daily activities seem restricted only by his "avoidance of twisting, bending and standing in one place for too long." (Tr. at 26.) Yet, Jimenez further testified he does no one household chore for any length of time to avoid aggravating his back. (Tr. at 56, 57.)

The ALJ labelled as inconsistent with other testimony and medical evidence Jimenez' statement that he could only sit for about five to ten minutes before needing to move around to relieve his pain. (Tr. at 25.) The ALJ observed Jimenez sitting for about thirty minutes without "any outward signs of discomfort." (Tr. at 25.) The ALJ highlighted that Jimenez said at one point his pain is fairly constant when he previously said his pain increased after sitting for ten minutes. (Tr. at 26.) He also stated Jimenez testified he drove his car for an hour on his way from Boulder to the hearing in Denver. (Tr. at 25.) In contrast, the record of the hearing shows Jimenez drove about half an hour from his home in Denver to the hearing. (Tr. at 77.)

Although the ALJ cited no particular medical exhibit, he might have been referring to a conclusion by one of Jimenez' examining doctors quoted in Defendant's Answer Brief: "[t]he patient appears to show no true objective findings of any gross abnormality except for discomfort in the iliosacral region bilaterally." (Tr. at 195.) The Secretary argues Jimenez worked with his back condition and it had not significantly deteriorated since Jimenez first reported it in 1976. (Def.'s Answer Br. at 2.)

The Secretary admits, however, Dr. Sabin confirmed Jimenez' degeneration of spinal discs and spondylosis, an abnormal fusing of the lumbar vertebrae. (Def.'s Answer Br. at 3.) The Secretary fails to note, whereas the Plaintiff did mention, that Dr. Sabin explained the spondylosis could account for Jimenez' "long history of back pain without obvious reason." (Tr. at 213.) The Plaintiff asserts his back pain suffered a "progressive worsening over time." (Pl.'s Br.Supp.Compl. at 3.)

Jimenez indicated he was taking only over-the-counter medication for his pain. Secretary argued Jimenez was not receiving any treatment for his back impairment permitting the conclusion that Jimenez' pain was amenable to treatment. (Def.'s Answer Br. at 8.) Plaintiff argues one doctor treated Jimenez with a cortisone shot and recommended further visits which would include physical therapy. (Pl.'s Br.Supp.Compl. at 4.) Financial reasons, however, prevented Jimenez' return to the doctor. (Pl.'s Br. Supp.Compl. at 4.)

The facts surrounding Jimenez' pain are an inconclusive indication of disability. Nevertheless, the ALJ's own findings, especially those concerning Jimenez' other work limitations, do not support substantially his decision to deny benefits to Jimenez.

## II. *Standard of Review*

■ Appellate standards limit review to two determinations. *Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497 (10th Cir.1992) (citing *Bernal v. Bowen,* 851 F.2d 297, 299 (10th Cir.1988)). These are: does the record as a whole contain substantial evidence to support the Secretary's final decision, which in this case is the ALJ's findings and decision and did the Secretary apply the correct legal standard? *Id.* at 1497. "The Secretary's findings stand if they are supported by 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hamilton,* 961 F.2d at 1498 (quoting *Broadbent v. Harris,* 698 F.2d 407, 414 (10th Cir.1983)).

■ The court must neither reweigh the evidence nor substitute its judgment for that of the ALJ, *Jozefowicz v. Heckler,* 811 F.2d

1352, 1357 (10th Cir.1987), but it will scrutinize evidence that constitutes mere conclusion, *Bernal v. Bowen*, 851 F.2d at 299. A fact-finder's simple search of the record for isolated bits of evidence does not pass the substantial evidence test. *Pettyjohn v. Sullivan*, 776 F.Supp. 1482, 1486 (D.Colo.1991), *remanded for further findings on other grounds sub nom., Pettyjohn v. Shalala*, 13 F.3d 406 (10th Cir. December 13, 1993) (unpublished opinion), *on remand* 874 F.Supp. 305 (D.Colo., 1995); *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir.1986).

The Secretary determines disability using a five-step process. *See* 20 C.F.R. § 404.1520 (1991); *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir.1992). The parties do not dispute that Jimenez carried his burden in the first four steps. Regarding these steps, the ALJ found Jimenez has not been gainfully employed, has severe impairments (degenerative disc and vision), does not meet or equal the listed disabilities and is incapable of his past work as a beer deliveryman. (Tr. at 29).

Thus the issues focus on the fifth step of the process where the Secretary has the burden of showing Jimenez can perform a significant number of jobs in the national or regional economy. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f), *Trimiar*, 966 F.2d at 1329. "Work which exists in the national economy" means jobs which exist in "significant numbers" either in the region where such individual lives or in several regions of the country. 42 U.S.C. § 423(d)(2)(A). To meet this burden the Secretary reviews Jimenez' residual capacity, past work experience (skills), age and education. 20 C.F.R. § 404.1520(f).

The crux of this case is whether substantial evidence supports two of the ALJ's conclusions: 1) Jimenez can work at some sedentary jobs, and 2) significant numbers of those sedentary jobs exist.

### III. *Merits*

A. *Jimenez' capacity to work a full-time sedentary job.*

Before reaching either the issue of sedentary jobs or the numbers of those jobs, the fact-finder must determine Jimenez' residual capacity, 20 C.F.R. § 404.1520(e, f). The ALJ found Jimenez could not return to his past delivery work and his vision, pain, need for sit/stand work and ability to follow only one or two-step instructions, restrict his range of sedentary work. (Tr. at 29.) The problem with the ALJ's findings, as noted by Plaintiff's counsel, (Pl.'s Br.Supp.Compl. at 12, 15), is that he did not ask the first question, can Jimenez perform eight hours of even sedentary work?

Both case law and the regulations have defined residual capacity as the maximum degree the person retains for "sustained" performance of a job. *Dollar v. Bowen*, 821 F.2d 530, 533 (10th Cir.1987), 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(c). As I have noted before, residual capacity covers not just the ability to find a job, but the ability to hold one under actual working conditions. *Pettyjohn v. Sullivan*, 776 F.Supp. at 1486; *Broadbent*, 698 F.2d at 413.

"No doubt, a claimant may have significant exertional limitations that prevent him from performing the strength requirements of even sedentary work." *Williams v. Bowen*, 844 F.2d 748, 752 (10th Cir.1988). Further, sedentary work requires about six hours of sitting according to expert testimony. *Van Tassel v. Sullivan*, 781 F.Supp. 1535, 1539 (D.Colo.1992); *see Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir.1993) (quoting Soc.Sec.Rul. 83–10, "sitting should generally total approximately 6 hours of an 8–hour workday").

This circuit directs an ALJ to "determine whether the claimant has an RFC [residual functional capacity] level and can perform the full range of work at his or her RFC level," *Thompson*, 987 F.2d at 1491, (citing to *Frey v. Bowen*, 816 F.2d 508, 512–513 (10th Cir.1987)). In the next step, the ALJ should employ the rules grid in 20 C.F.R. Pt. 404, Subpt. P, App. 2 or seek a vocational expert's testimony. *Thompson*, 987 F.2d at 1491.

Here, the ALJ carefully noted two qualifications for most sedentary work, Jimenez's ability to lift up to ten pounds, 20 C.F.R. § 404.1567(a), and his retention of manual dexterity, 20 C.F.R. Pt. 404, Subpt. P, App. 2; Soc.Sec.Rul. 83–14. He also con-

fabulated all the various segments of time Jimenez could stand or sit, none of which totaled more than half an hour, to reach an eight-hour day.

This addition, however obscures the fact that under the ALJ's own analysis of Jimenez' sit and stand limitations, he could scarcely work an eight-hour day. Predictably, he could work only in a situation tailored to his limitations. "Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit and stand at will," Soc.Sec.Rul. 83–12. The ALJ's addition of all the possible time segments to reach an eight-hour day for Jimenez' residual capacity is analogous to the prohibition on picking through the record for isolated bits of evidence. *See Singletary*, 798 F.2d at 823. Substantial evidence does not support the ALJ's finding that Jimenez can work an eight-hour day.

As the *Thompson* court directs, the ALJ then consulted Roger Cozens' expert vocational testimony. Yet the ALJ did not base his finding of Jimenez' ability to do sedentary work on any evidence other than the expert's response to his one hypothetical question. Although the expert suggested jobs "that might be possible", his basic reaction was "uneasiness" that Jimenez could be a competitive employee. (Tr. at 95.)

The ALJ considered the suggested jobs constituted a substantial number Jimenez could perform. (Tr. at 29.) Yet neither he nor the expert gave evidence to prove the underlying assumption (conclusion)—that Jimenez could even perform an eight-hour sedentary work day.

The ALJ's findings limiting Jimenez' capacity—chiefly his vision, sit/stand requirement, pain and ability to follow only one or two-step instructions—go to the number of jobs Jimenez can perform. They are not reasons to conclude he can work an eight-hour day. Absent specific, legitimate reasons to support the conclusion Jimenez can work an 8-hour sedentary job on a daily basis, the ALJ's findings concerning Jimenez's residual capacity have not met the substantial evidence test. *Jozefowicz v. Heckler*, 811 F.2d at 1359.

**B.** *Can Jimenez work a significant number of jobs?*

The regulations classify Jimenez's impairments as both exertional (sit/stand, pain) and non-exertional (vision, pain and inability to follow instructions). 20 C.F.R. § 404.1545. Consequently, the grid, 20 C.F.R. Subpt P, App. 2, which indicates when an applicant is disabled based on exertional factors, do not strictly apply to Jimenez' case. It would only apply if it led to a finding of disabled. 20 C.F.R. § 404.1569a. The grid in the appendix simply serves as a framework in a case such as this one. *Id.; See Trimiar*, 966 F.2d at 1333; *Talbot v. Heckler*, 814 F.2d 1456, 1460 (10th Cir.1987).

Therefore, the ALJ cited to appendix rules 201.21 and 201.27 (20 C.F.R. Subpt. P, App. 2), assumedly as guides, in his finding of no disability. (Tr. at 29.) Both of those rules assume the person can perform the full range of sedentary unskilled work, which the ALJ found Jimenez could not do. (Tr. at 29.)

However, 201.00(h) (20 C.F.R. Subpt. P, App. 2) gives illustrations of where a combination of exertional and non-exertional impairments—the situation Jimenez finds himself in—equal a finding of disabled. In one example, a cardiovascular and right hand injury limiting bilateral manual dexterity, "compromises the only range of work for which the individual is otherwise qualified." *Id.* This latter example more closely resembles Jimenez' case than the appendix rules which assume a full range of sedentary work options. Jimenez' sit/stand requirement and vision limitation substantially compromise the pool of jobs he can perform.

Secretary's counsel correctly points out, (Def.'s Answer Br. at 9 n. 5), that Jimenez' counsel overstates the number of jobs he must be able to do to show significant numbers of jobs exist, (Pl.'s Br.Supp.Compl. at 18). In cases such as *Thompson*, the court directs the claimant have the capacity to perform a full range of the work described in the rule that will be applied to him from the grid. *Thompson*, 987 F.2d at 1491. When the grids are inapplicable because the claimant cannot perform a full range of work, the

ALJ should consult expert testimony. *Id.* The expert is supposed to guide the ALJ in determining what range of work the claimant can do.

■ Likewise, the standard that the claimant must be able to do a "substantial majority" of the jobs within his residual capacity is inapposite. *See Campbell v. Bowen,* 822 F.2d 1518, 1523 (10th Cir.1987). *Campbell* dealt with a residual capacity for light work. The regulations specify that a claimant with a residual capacity for light work must be able to do "substantially all of these activities." 20 C.F.R. § 404.1567. The regulations give no such "substantial" requirement to the sedentary work category. *Id.*

Unfortunately, these cases do not inform us how the Secretary must characterize the pool of jobs to meet the substantial number test when using expert testimony. The Tenth Circuit has rejected any "bright-line" test but has noted several factors the court evaluates: level of disability, reliability of expert testimony, travelling distance to work and the types, availability and isolated nature of the jobs. *Trimiar,* 966 F.2d at 1330 (citing *Jenkins v. Bowen,* 861 F.2d 1083, 1087 (8th Cir.1988)).

In this case, the expert, Roger Cozens' guarded testimony provides the basis for evaluating the crucial factors regarding Jimenez: the types, availability and isolated nature of the jobs. Assuming Jimenez could work an eight-hour day, the ALJ otherwise accurately characterized Jimenez' disability. (*See* Tr. at 93–94.)

But all of Cozens' testimony is hedged. He summarized his initial reaction to the hypothetical, "I can't really identify jobs where I feel he would be a competitive employee." (Tr. at 95.) After the ALJ suggested receptionist positions, Cozens replied, "Some of those would possibly fit into a category that he can handle but when it comes to actually finding those jobs, I think they are very limited although there are supposed to be 2,510 in the local, in the state of Colorado." (Tr. at 96.)

Cozens later suggested that at parking garages and self-service gas stations, "there are probably cashiering jobs which he could do which are generally available in pretty good quantity." (Tr. at 99.) However, after considering Jimenez' limited manual dexterity with a cash register, his vision problems at checking license plates, and the possibility he would have to lift more than ten pounds hauling the garbage or restocking shelves, Cozens reduced the number from 1,560 to 200–250 possible jobs. Cozens' final caveat on these jobs, "[a]nd yet the area is so foreign to his previous job experience I think adjustment to this kind of a job might be difficult." (Tr. at 99.)

■ In *Trimiar,* neither the court nor apparently the expert had any doubt that 650–900 unskilled jobs, which existed for the plaintiff in his state, met the significant numbers test. *Trimiar,* 966 F.2d at 1330. In contrast, Cozens has doubts about the availability to Jimenez of all the jobs he cited. This case more closely resembles *Campbell v. Bowen,* 822 F.2d at 1524, where the record failed to establish that the plaintiff could actually do any of the jobs listed by the expert. Even accepting the validity of the 200–250 cashiering jobs suggested by Cozens, 200–250 jobs spread across Colorado is not a significant number. The lowest specific number of jobs I found a court considered a significant number was 500. *See Jenkins,* 861 F.2d at 1087. Therefore, I conclude the Secretary has not shown significant numbers of sedentary jobs exist, which Jimenez could work.

■ Finally, even if Cozens has described a significant number of jobs, the jobs fit a flawed hypothetical—that Jimenez can work an eight hour day. In soliciting expert testimony, the ALJ must present the expert with a hypothetical that precisely reflects a claimant's impairments. *See Hargis v. Sullivan,* 945 F.2d 1482, 1492 (10th Cir.1991).

In *Gay v. Sullivan,* 986 F.2d 1336, 1341 n. 3 (10th Cir.1993) the court accepted an oblique rather than precise reference to one impairment after it had already affirmed the ALJ's findings on the claimant's other impairments and limitations. In contrast, here the ALJ has not justified a fundamental premise for the hypothetical—Jimenez' ability to work an eight-hour day consistently.

*See Jozefowicz,* 811 F.2d at 1359. The situation is more akin to *Hargis* where the court rejected the ALJ's finding because his hypothetical to the expert did not include the plaintiff's mental impairment. *Hargis,* 945 F.2d at 1491.

### C. *Other arguments by the parties.*

 The parties dispute at length the findings and implications of Jimenez' pain. The evidence is mixed. The ALJ has cited substantial evidence for his findings. He acknowledged pain and the resulting limitations in Jimenez' ability to sit and stand. (Tr. at 29.) Jimenez' counsel concedes the ALJ followed the pain evaluation test in *Luna v. Bowen,* 834 F.2d 161, 163 (10th Cir.1987). Counsel for Plaintiff contends, however, the ALJ did not consider all the factors, or all the evidence, as mandated by Soc.Sec.Rul. 88–13. To the contrary, the ALJ did consider several factors, including Jimenez' credibility according to the process set forth in *Luna,* 834 F.2d at 163. One of Jimenez' examining doctors implied Jimenez could still work. (Tr. at 208.) As Secretary's counsel notes, disability requires more than the inability to work without pain. *See Ray v. Bowen,* 865 F.2d 222, 225 (10th Cir. 1989).

Essentially, Jimenez' counsel wants this court sitting as an appellate court to give more weight to the favorable factors and ignore the unfavorable. Although the ALJ made some errors in his determinations, in a case such as this with conflicting and inconclusive facts, he is entitled to decide whom he believes.

The Secretary correctly argues that neither Jimenez' back impairment, eye impairment or pain constitute disability by itself. The Secretary fails, however, to address adequately the essence of Jimenez' case, what is his residual capacity with the combination of impairments?

Counsel for Jimenez argues the ALJ did not adequately consider Jimenez' lack of education. The ALJ notes in findings that Jimenez received a high school education, (Tr. at 29), and he discounted his education to tenth or eleventh grade level in the hypothetical for Cozens, (Tr. at 94). This characterization still overstates Jimenez reading, writing and math skills based on his vocational testing which placed him at the seventh grade level or below. (Tr. at 207.)

### IV. *Conclusion*

The ALJ's decision hangs on Cozens' guarded testimony. Cozens only tentatively suggested jobs for Jimenez. Neither he nor the ALJ substantiated the crucial underlying assumption, that Jimenez' sedentary residual capacity included the ability to work an eight-hour day. The ALJ's calculated addition does not support substantially the eight-hour day assumption.

Cozens gave only tentative job suggestions to the hypothetical describing the required sit/stand option. Given the qualified nature of his responses and the fact that the ALJ gave no further explanation why a person who could sit for at most four hours qualifies for sedentary work, the ALJ has not provided sufficient evidence to find Jimenez has a residual capacity for sedentary work.

Cozens hedged on the number of jobs, even for the cashier positions that he suggested. This undercuts the validity of the job numbers and fails to constitute substantial evidence of a significant number of jobs. The basic reason the job numbers fail to provide significant numbers available to Jimenez is because Cozens gave them in response to a flawed hypothetical. The ALJ failed to give legitimate reasons why Jimenez could consistently work an eight-hour sedentary day when his own findings suggest the opposite. Cozens' replies to a flawed hypothetical cannot constitute substantial evidence. Given the ALJ relies solely on Cozens' testimony, his finding does not rest on substantial testimony.

Reviewing the record as a whole, I conclude Jimenez is disabled within the meaning of the Act and the Secretary's regulations. Nothing will be gained by further administrative proceedings. *See Dollar,* 821 F.2d at 536; *Frey,* 816 F.2d at 518. The decision of the Secretary is REVERSED and REMANDED for an award of benefits.