Gabriel **WRIGHT**, Plaintiff,

v.

**Shirley S. CHATER, Commissioner of Social Security, Defendant.**

No.  96–CV–6178L.

United States District Court, W.D. New York.

July 9, 1997.

Robert W. Wood, Rochester, NY, for plaintiff.

Brian M. McCarthy, Asst U.S. Atty., Rochester, NY, for defendant.

## DECISION AND ORDER

LARIMER, Chief Judge.

Plaintiff Gabriel Wright ("Wright") commenced this action pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Health & Human Services ("the Commissioner"), denying his applications for Social Security disability and Supplemental Security Income benefits. Pending before me are the parties' cross-motions for judgment on the pleadings, pursuant to Fed.R.Civ.P. 12(c). For the reasons set forth below, the Commissioner's motion is granted and plaintiff's motion is denied.

### *PROCEDURAL BACKGROUND*

Wright applied for Disability Insurance and Supplemental Security Income (SSI) benefits on November 29, 1993 Tr. 64–66, 94–96.[1] The plaintiff, who was born on January 25, 1976, claimed disability as a result of gunshot wounds to his right hand on May 1, 1993. At the time of his application, a surgeon had operated on plaintiff's hand at least twice in attempts to restore functioning. Plaintiff had worked as a fast-food laborer, but had not worked enough to be considered to have any "past relevant work". Social Security denied plaintiff's applications and plaintiff requested reconsideration, which So-

cial Security also denied. Tr. 67–93, 100–105.

The plaintiff requested a hearing to dispute the denials. Tr. 130–131. After the hearing, an Administrative Law Judge ("ALJ") issued a written decision in which she found Wright not disabled. Tr. 9–18. The ALJ found that plaintiff could not perform a full range of work in the "light" category, but found there were significant numbers of jobs in the national economy which the claimant could still perform despite his disabilities. Tr. 17. In a letter dated February 9, 1996, the Commissioner's Appeals Council affirmed the ALJ's decision. The ALJ's decision thus became the Commissioner's final decision. Tr. 4–5.

### *MEDICAL EVIDENCE*

Wright suffered a gunshot wound on May 1, 1993 for which he was treated by Ralph Pennino, M.D. Tr. 170 –180. That day, Dr. Pennino performed surgery to clear and reconstruct the wound. Tr. 171–172. The doctor continued to treat plaintiff over the next several months until at least July 1994. Tr. 200. During that time, Dr. Pennino performed at least two other procedures to repair plaintiff's wounds. The doctor's office notes indicate a frustration with plaintiff's compliance with recommended rehabilitation. Dr. Pennino noted that Wright failed to follow through with physical therapy appointments and home therapy. Tr. 200–201. Eleven months after the shooting, Dr. Pennino completed a "Medical Report (Employment)" in which he noted his opinion that Wright was capable of working full-time, but with limitations in the amount of pushing and pulling with his right hand, and working at a high rate of speed. The report included the comment "no repetitive work at all." Tr. 249.

The record also contains several reports from the Physical Medicine and Rehabilitation Center, where Wright underwent the physical therapy Dr. Pennino ordered. Those show that Wright missed the majority of his appointments. Tr. 240. On March 1,

---

1. "Tr. ——" refers to the page of the transcript of the Administrative Record filed by the Commis- sioner with her Answer.

1994, the physical therapist apparently discussed the reason for plaintiff's failure to attend sessions, and even asked whether he wished to attend therapy closer to home. Tr. 221. Wright "expressed a desire to continue here at [Rochester General Hospital]." *Id.* The record does not contain information regarding any other impairments.

### NON–MEDICAL EVIDENCE

At the hearing before the ALJ, Wright testified that he was right-hand dominant. Tr. 35. He also told the ALJ that he attended all but one or two of the physical rehabilitation sessions. Tr. 48. Wright complained that the pain in his hand lasted for over one year (Tr. 46), and that he experienced pain at the site of a bone graft on his hip if he walked for over fifteen minutes. Tr. 50.

A vocational expert ("V.E.") testified at the hearing that an individual with limited use of the non-dominant hand could no longer perform the janitorial job that plaintiff previously held at McDonald's. Tr. 53. The V.E. also stated that there were jobs available in the local and national economy for individuals with limited education and job skills, and with little or no use of one hand. In particular, the V.E. identified at least three positions—bakery line inspector, copy messenger, and parking attendant. Tr. 53–54. The V.E. also noted that while bimanual ability would make a person more efficient at these positions, "they could be done by the non-dominant hand." Tr. 54.

### DISCUSSION

A. *The Standard of Review*

■ A court may reverse the factual findings of the Commissioner only if those findings are not supported by substantial evidence in the record. 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Thus, the determination of the Commissioner is conclusive as long as it is supported by substantial evidence and is not based on legal error. *Ar-*

*none v. Bowen,* 882 F.2d 34, 37 (2d Cir.1989) (citations omitted).

B. *The Standard for Finding a Disability*

A person is considered disabled under the Social Security Act if "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less that twelve months . . ." 42 U.S.C. §§ 423(d)(1)(A) and 1382c (a)(3)(A). The Commissioner's regulations outline a five step evaluation process to determine whether an applicant meets this definition.

First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform.

*Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir.1982).

■ Normally, a claim under the Supplemental Security Income benefits (SSI) program involves the same five step process. However, as defendant points out, a different standard applies in an evaluation of a child's eligibility for SSI. Pursuant to the Personal

Responsibility and Work Opportunity Act of 1996, Pub. Law 104–193, this standard in children's disability claims was modified, and by its terms, the modifications would govern a claim such as Wright's for at least the two month period before Wright turned eighteen, at which time the adult regulations would directly apply to his case. However, defendant's previous and current regulations specify that the evaluation of age appropriate functioning for an older adolescent is the same as that for a younger adult. 20 C.F.R. § 416.924a(c)(2)[2]. In this case, the ALJ evaluated Wright exclusively under the adult standard (Tr. 11—12), based upon the closeness to his eighteenth birthday as well as plaintiff's history of competitive employment. A review of the children's evaluation process shows that the ALJ's use of the adult standard here was proper.

## C. The ALJ's Decision

The ALJ ruled that Wright retained the ability to perform at least some light work, and therefore she found that Wright was not entitled to disability benefits. Tr. 17. The ALJ based this conclusion on several factors. Initially, she found Wright's testimony less than credible. In particular, the ALJ noted that although Wright complained of pain in his hand, there was no evidence from the physician that Wright took any pain-relief medications since the time of his last surgery in November 1993. Tr. 13. She further noted that although plaintiff testified to pain in the hip (at the bone graft site) there is no record of complaints about this pain in the medical records. *Id.* The ALJ also questioned plaintiff's living arrangements, since Wright told her that he alternated between three friends' homes and none of them expected him to do any chores or to pay for his room and board.

The ALJ based her decision on the evidence of the vocational expert who testified that Wright could still perform work that

existed in significant numbers in the local and national economy. Tr. 17.

## D. Substantial Evidence

The record before me reveals a young man's tragedy. Wright testified that even before the shooting incident that has maimed him, he was stabbed at work. Tr. 36. Then, at the age of seventeen, he suffered the gunshot wound after which followed a months-long series of surgical procedures. The medical evidence shows that, for whatever reason, plaintiff failed to make every effort to rehabilitate his hand, and it is likely he will suffer the consequences for the rest of his life.

The issue here, however, is whether Wright is "disabled" as that term is defined under the Social Security Act. It is clear that loss of the use of an arm or hand is not disabling *per se*. *See e.g., Odle v. Secretary of Health and Human Services,* 788 F.2d 1158, 1161 (6th Cir.1985). Even with that injury, the question is whether plaintiff is still able to perform jobs which exist in substantial numbers in the national economy.

Plaintiff makes two arguments in his motion for judgment on the pleadings. The first argument is based upon the ALJ's credibility findings. Plaintiff argues that if his testimony were fully credited, the only finding possible would be that he remains disabled. While this may be true, the ALJ must weigh evidence and make findings about credibility. "The ALJ has discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant," *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979), though a "finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." *Williams on Behalf of Williams v.*

---

**2.** "Thus, we consider that the older a child is, the more he or she is like a younger adult; we consider an older adolescent (i.e., a child aged 16 to 18) to be most like a 'younger person' (i.e., a person in the age category 18 to 45....'" 20 C.F.R. § 416.924a(c)(2)). Further, "As children approach adulthood—that is, by about age 16— the functional abilities, skills, and behaviors that are appropriate for them are those that are also appropriate for adults. Older adolescents generally also share with the youngest adults the same abilities to adapt to work-related activities despite a severe impairment(s)." 20 C.F.R. § 924a(c)(4).

*Bowen,* 859 F.2d 255, 260–61 (2d Cir.1988). Here, the ALJ adequately explained her negative assessment of Wright's credibility relating to his pain, citing Dr. Pennino's treatment notes, the physical therapist's reports, and the lack of ongoing treatment for pain relief. Significantly the ALJ also relied upon the treating physician's report, prepared eleven months after the incident, that Wright could perform full-time employment on a limited basis. Likewise, the ALJ's other credibility assessments are well documented.

■ As a second matter, plaintiff argues that the ALJ improperly relied upon the vocational expert's testimony. Plaintiff argues that there are *not* significant numbers of jobs in the local or national economy which he could still perform despite his impairment. Under the Social Security Act, an individual who can no longer perform his past relevant work would not be found disabled if he could still perform work which exists in significant numbers in either the region where the plaintiff lives or in several regions of the country. 42 U.S.C. § 423(d)(2)(A). The Commissioner's regulations interpret this section as follows:

> *How we determine the existence of work.* Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications. Isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where you live are not considered "work which exists in the national economy". We will not deny you disability benefits on the basis of the existence of these kinds of jobs. If work that you can do does not exist in the national economy, we will determine that you are disabled. However, if work that you can do does exist in the national economy, we will determine that you are not disabled.

20 C.F.R. §§ 404.1566(b) and 416.966(b).

At the hearing the V.E. testified that there were jobs in the local region which could be performed by an individual with limited or no use of his *dominant* hand in at least three job categories.[3] Each category contained hundreds of jobs. Altogether the categories contained approximately 1700 jobs. Several of the Circuit Courts have examined the question of what constitutes a "significant number" of jobs. For instance, the Seventh Circuit Court of Appeals noted:

> [Plaintiff's] contention that 1,400 job positions are not a significant number of jobs is unsupported by case law. In *Hall v. Bowen,* 837 F.2d 272, 275 (6th Cir.1988), the Sixth Circuit found 1,350 positions were a significant number of jobs. In *Barker v. Secretary of Health & Human Services,* 882 F.2d 1474, 1479 (9th Cir. 1989), the Ninth Circuit found 1,266 positions were within the parameters of a significant number of jobs. The Tenth Circuit, while refusing to draw any bright line, found 850–1,000 potential jobs were a significant number of jobs in *Trimiar v. Sullivan,* 966 F.2d 1326, 1330–32 (10th Cir. 1992). See also *Jenkins v. Bowen,* 861 F.2d 1083, 1087 (8th Cir.1988) (500 jobs are significant number); *Allen v. Bowen,* 816 F.2d 600, 602 (11th Cir.1987) (174 positions are significant number); *Nix v. Sullivan,* 744 F.Supp. 855, 863 (N.D.[Ind.] 1990) (675 jobs are significant number), affd, 936 F.2d 575 (7th Cir.1991).

*Lee v. Sullivan,* 988 F.2d 789, 794 (7th Cir. 1993).

The approximately 1,700 jobs in the Finger Lakes region that the ALJ found were potentially available to an individual with the vocational characteristics of the plaintiff is therefore a significant number.

### CONCLUSION

I find defendant's decision that plaintiff Gabriel Wright was not disabled is supported by substantial evidence. Defendant's motion for judgment on the pleadings is **granted**, and plaintiff's motion for judgment on the

---

**3.** There appears to be some discrepancy as to which is Wright's dominant hand. While the papers before me indicate that Wright is left-handed, he testified that he is *right-handed.* Tr.

35. The V.E. testified that the jobs in question could be performed with the non-dominant hand. Tr. 54.

pleadings is therefore **denied**. Plaintiff's complaint is, therefore, dismissed.

IT IS SO ORDERED.