**Roger R. FRANKLIN, Plaintiff,**

v.

**Kenneth S. APFEL, Commissioner of the Social Security Administration,[1] Defendant.**

No. 96–CV–811C.

United States District Court, W.D. New York.

May 22, 1998.

---

1. Pursuant to P.L. No. 103–296, the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security effective March 31, 1995. In accordance with § 106(d) of P.L. No. 103–296, and Fed.R.Civ.P. 25(d)(1), Apfel, the Commissioner of Social Security, is substituted for Secretary of Health and Human Services, as defendant in this action.

Labin & Buffomante (Thomas C. Farley, Jr., of counsel), Buffalo, NY, for Plaintiff.

Denise E. O'Donnell, U.S. Attorney (Jane B. Wolfe, Assistant U.S. Attorney, of counsel), Buffalo, NY, for Defendant.

CURTIN, District Judge.

Plaintiff Roger R. Franklin ("Franklin") filed this action pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to appeal defendant's unfavorable final decision denying disability benefits. Plaintiff and defendant, Commissioner Kenneth S. Apfel (the "Commissioner"), have cross-moved for judgment on the pleadings pursuant to Federal Rules of Civil Procedure 12(c). For the following reasons, plaintiff's motion

is granted, defendant's motion is denied, and the matter is remanded for further administrative proceedings.

### Procedural History

Plaintiff filed an application for Social Security disability insurance benefits on November 1, 1993 (T. 84 – 86).[2] The Commissioner denied this application upon initial review and again on reconsideration. Plaintiff requested an administrative hearing, which was held on January 26, 1995, before an administrative law judge ("ALJ") (T. 49 – 83). The judge issued a decision on May 9, 1995, in which he found that plaintiff was not disabled (T. 23 – 38). The Appeals Council denied the plaintiff's request for review on September 25, 1996, at which point the decision of the administrative law judge became final (T. 3 – 4). Plaintiff then filed the present civil action.

### Medical History

Plaintiff alleged that he has been disabled since January 17, 1993, due to back problems, depression, anxiety, and stomach ulcers (T. 116). Plaintiff suffered back pain after he was injured at work in 1980 (*Id.*). Plaintiff continued to work, but as of July 1988 he was receiving twice-monthly treatments from Dr. Alt, a chiropractor. (T. 156, 159). On November 2, 1993, Dr. Alt indicated in a report to the New York State Worker's Compensation Board that plaintiff was totally disabled due to "Acute lumbosacral strain/ sprain" (*Id.*). Dr. Alt's report included the results of two CT scans of plaintiff's lumbosacral spine (T. 157, 158). These tests, performed on August 2, 1988 and April 23, 1993, both concluded with "normal" findings (*Id.*).

In 1994, Dr. Alt's successor, chiropractor Dr. Horvath, stated that plaintiff suffered from "a chronic low back pain condition" (T. 172). After noting the test results that supported this diagnosis, Dr. Horvath stated that "[t]he patient has chronic hypertenisities [sic] of lumbar spine paraspinal musculature bilaterally. The patient['s] physical limita-

tions includ[e] not engaging in any lifting over a maximum of 25 pounds and no frequent lifting and carrying of objects greater than 15 pounds. The patient responds favorably to chiropractic care and the chiropractic care helps him perform activities of daily living at a higher functional capacity" (*Id.*). In a January 25, 1995 letter to plaintiff's attorney, Dr. Horvath added to those limitations, noting that "Mr. Franklin should also not engage in any prolonged sitting as the above restrictions aggravate his now chronic lumbar condition" (T. 197).

Plaintiff also sought treatment from Dr. Young Man Kim, a physician who completed forms for SSA on two occasions. After an examination on December 8, 1993, Dr. Kim provided diagnoses of lumbosacral strain and emphysema (T. 160). On an accompanying form Dr. Kim stated that plaintiff was limited in the amount he could "lift and carry". This assessment also included restrictions as to ability to "stand and/or walk" for less than two hours per day, sitting limited to less than six hours per day, and a limited ability to "push and/or pull" (T. 169).[3]

Dr. Kim again completed a form in September 1994 (T. 180 – 81). At this time, he recorded the following restrictions: maximum lifting/carrying fifteen pounds, both occasionally and frequently; a total of two hours standing/walking during an eight-hour workday, fifteen minutes without interruption; and a total of two hours sitting, ten minutes without interruption (T. 180). An accompanying report stated that plaintiff suffered from lumbosacral strain, chronic obstructive pulmonary disease, and a peptic ulcer (T. 185).

In addition to these physical problems, plaintiff was treated beginning in April 1990 for "generalized anxiety disorder with depressed mood" by psychiatrist Dr. Bona (T. 136). The record contains Dr. Bona's treatment notes for the period between 1990 and 1993 and reveal that although plaintiff's con-

---

**2.** Citations to the transcript of the administrative record will be abbreviated as "T.", followed by the appropriate page number.

**3.** Dr. Kim's responses are unclear with respect to limits on lifting/carrying and pushing/pulling. In both areas, Dr. Kim wrote "No" which might indicate that plaintiff should not perform these activities, but these responses do not seem to be in answer to any question (T. 169).

dition never really improved, it also never became more severe (T. 133 – 54). Throughout the treatment period, plaintiff underwent monthly sessions, and the psychiatrist prescribed a small dose of Valium (*Id.*). In one 1993 report, Dr. Bona noted that plaintiff's "inability to obtain gainful employment has however caused him to experience periods of depression and increased anxiety" (T. 136).

In a Medical Report for Determination of Disability signed on June 10, 1993, Dr. Bona reported that plaintiff had normal abilities in four broad areas of mental functioning (T. 134 – 135). These four areas were understanding, carrying out and remembering instructions; responding appropriately to coworkers and to supervision; meeting quality standards and production norms; and sustaining adequate attendance (T. 135).

In August 1994, Dr. Bona completed a "Medical Assessment of Ability to Do Work-related Activities (Mental)" form in which he indicated very diverse functioning in several areas (T. 174 – 75). Thus, although he found that plaintiff had "good" ability to relate to co-workers and to deal with the public, plaintiff also had only a "fair" ability to follow work rules, use judgment, and function independently, and "poor to no[ ]" ability to deal with work stresses or maintain attention/concentration (T. 174).[4]

### Non–Medical History

Franklin completed eighth grade and attended high school until age seventeen, but never earned a general equivalency diploma ("GED") (T. 120, 53 – 54). Franklin testified that he learned to cook in the Army, but had no other vocational training (T. 54). Plaintiff worked as a vending machine deliverer from 1966 through 1988, and as an installer of juice machines between 1990 and 1992 and testified that he had not worked since then (T. 120, 61). However, plaintiff told his psychiatrist in 1993 that he had helped a used car dealer, and was engaged in "buying and selling", a term which is otherwise unexplained in the record (T. 140, 133). Plaintiff also attempted to work as a taxicab driver,

apparently for very short periods of time, but stopped due to the resulting pain (T. 139).

In an October 1993 report to the Social Security Administration, Franklin wrote that he did not perform much home maintenance because of fear that he would have pain (T. 119). At his hearing, plaintiff testified that he watched television at home and did not help with the household chores, snow shoveling, grass cutting or shopping for groceries (T. 61 – 62, 66 – 67).

### The Administrative Law Judge's Decision

In his May 9, 1995, decision, the ALJ concluded that the plaintiff was not disabled within the meaning of the Social Security Act and not entitled to disability insurance benefits (T. 35). The ALJ found that plaintiff suffered from severe impairments which he listed as "severe back impairment, mild emphysema, and some situational anxiety and depression" (T. 34). The ALJ held that plaintiff's allegations of subjective symptoms and functional limitations "appear exaggerated in light of the clinical findings and medical opinions of record." (*Id.*). The ALJ concluded that plaintiff could no longer do his past work, but could still perform almost a full range of light work (T. 34). Thus the ALJ found plaintiff "not disabled" under the "Medical–Vocational Guidelines" ("grids"), and specifically, that plaintiff's exertional and non-exertional impairments did not prevent him from performing work as a rental car deliverer (T. 34 – 35).

The Judge gave only minimal weight to Dr. Kim's evaluation of plaintiff's functioning and instead relied upon chiropractor Horvath's assessment, stating that Kim had neither "a treating relationship with the claimant, as does Dr. Horvath, nor does he have the experience of Dr. Horvath in a specialized area of care pertinent to the claimant's alleged impairment" (T. 29).

The Judge also considered psychiatrist Dr. Bona's clinical notes as indications of plaintiff's ability to function. Further, he cited the Medical Assessment of Ability to Perform Work–Related Activities (Mental) form

---

**4.** The form included the following definitions: "Good—Ability to function in this area is limited b[ut] satisfactory; Fair—Ability to function in this area is seriously limited, but not precluded; Poor or None—No useful ability to function in this area." (T. 174).

that Dr. Bona completed (T. 29 – 30). The ALJ noted the positive aspects of this report and failed to mention the areas of it which stated that plaintiff had poor or no ability to function, such as inability to deal with work stresses and maintain concentration/attention (T. 174).

### Discussion

 The Social Security Act states that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive..." 42 U.S.C. § 405(g) (1997). Absent an erroneous application of law by the Commissioner, this Court may only review the factual finding of the Commissioner in order to determine if the administrative record contains substantial evidence to support such findings. *Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir.1991).

 This Court has no power to conduct a *de novo* review and must respect the Commissioner's findings. *Jones,* 949 F.2d at 59. Substantial evidence, in the context of a Social Security case, is defined as "more than a mere scintilla," that which "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)).

 A claimant seeking benefits is considered disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." *Wagner v. Secretary of Health and Human Services,* 906 F.2d 856, 860 (2d Cir.1990) (citing 42 U.S.C. § 423(d)(2)(A)). The Commissioner must use the five-step inquiry outlined in the Social Security regulations. 20 C.F.R. §§ 404.1520, 416.920 (1990). The Second Circuit recently summarized this five-step process for evaluating claims of disability as follows:

First, the SSA considers whether the claimant is currently engaged in substantial gainful employment. If not, then the SSA considers whether the claimant has a "severe impairment" that significantly limits its the "ability to do basic work activities." If the claimant does suffer such an impairment, then the SSA determines whether this impairment is one of those listed in Appendix 1 of the regulations. If the claimant's impairment is one of those listed, the SSA will presume the claimant to be disabled. If the impairment is not so listed, then the SSA must determine whether the claimant possesses the "residual functional capacity" to perform his or her past relevant work. Finally, if the claimant is unable to perform his or her past relevant work, then the burden shifts to the SSA to prove that the claimant is capable of performing "any other work."

*Schaal v. Apfel,* 134 F.3d 496, 500 (2d Cir. 1998), (*citing Perez v. Chater,* 77 F.3d 41, 46 (2d Cir.1996) *and* 20 C.F.R. §§ 404.1520, 416.920) (footnote omitted)).

The Commissioner argues that the ALJ's findings are supported by substantial evidence. First, the Commissioner notes that there was very little in the way of objective findings to support plaintiff's claims of severe back pain. The Commissioner also pointed out that plaintiff started psychiatric treatment with Dr. Bona in 1990, while he was still working. In addition, Dr. Bona's extensive treatment notes demonstrate that plaintiff at times was not depressed or suffering from anxiety, and that plaintiff engaged in somewhat more activity than he testified to. Finally, defendant argues that he met his burden of proof at the fifth step of the evaluation process when the ALJ properly relied on both the grids and the testimony of a vocational expert to find that there was other employment that plaintiff could still perform.

Plaintiff argues that the ALJ erred in finding that he could still perform almost a full range of light work, and therefore applied the incorrect grid rules.[5] Plaintiff also con-

---

5. The regulations contain the following definition of "light work:"

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carry-

ing of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it in-

tests the ALJ's finding that a significant number of jobs existed in the local economy which he could still perform. Plaintiff claims that the position of rental car deliverer was categorized as one requiring extensive sitting. Further, the vocational expert ("VE") who testified at the hearing stated that the position existed chiefly near airports, and only in limited numbers in the Dunkirk area where plaintiff lived. The VE testified that there were approximately 206 such jobs in the entire Western New York region.

Plaintiff also pointed out that the number of jobs available were not significant by noting the following dialogue with respect to a job as security system monitor, with 480 positions in that region:

> [ALJ] Would 480 be a sufficient number to constitute a[n] employment pool that would be realistic for a claimant to be able to get into?

> [VE] I think if he was better positioned to the Buffalo area it may be but it's a little on the light side for somebody, perhaps, living in the [Dunkirk] area.

(T. 78).

I address the parties' contentions below.

## I. Plaintiff's Exertional Residual Functional Capacity

■■■ As noted above, the ALJ's findings are conclusive if they are supported by substantial evidence. In this case, the ·ALJ's finding with respect to plaintiff's residual functional capacity is supported by substantial evidence. The judge found that plaintiff could perform an almost full range of light work, with the full range of work reduced by plaintiff's non-exertional limitations (T. 34). To reach this conclusion, the ALJ credited the functional assessment of Dr. Horvath over the evaluation of Dr. Kim, and backed up his reasoning with reference to the factors outlined in the Commissioner's regulations. 20 C.F.R. § 404.1527(d)(2). *See also Schaal,* 134 F.3d at 503–04. In addition, the ALJ

pointed to specific notes in Dr. Bona's records to demonstrate that plaintiff's daily activities were not as restricted as plaintiff claimed. during the hearing. Thus, I find that the ALJ's conclusion that plaintiff exertionally could perform an almost full range of light work is supported by substantial evidence.

## II. Plaintiff's Non–Exertional Functioning

■■■ The ALJ limited the plaintiff's ability to perform a full range of light work due to his non-exertional impairments (T. 34). The chief·non-exertional impairments in the record were the effects of plaintiff's depression and anxiety. The ALJ downplayed these impairments by finding that they were "situational" (*Id.*). The ALJ noted Dr. Bona's reports which indicated that unemployment was a major cause of plaintiff's anxiety and depression.

In further evaluation of plaintiff's non-exertional impairments, the ALJ acknowledged Dr. Bona's reporting of the areas of plaintiff's strengths, but ignored areas of serious limitations that the psychiatrist also reported.

SSA has provided guidance to ALJs and other decision makers in Social Security Ruling 85–15 ("SSR 85–15"), entitled *Titles II and XVI: Capacity to Do Other Work—The Medical–Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments:*

> Where a person's only impairment is mental, is not of listing severity, but does prevent the person from meeting the mental demands of past relevant work and prevents the transferability of acquired work skills, the final consideration is whether the person can be expected to perform unskilled work. The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and

---

volves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine

that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.
20 C.F.R. § 416.967(b)

remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. *A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base.* This, in turn, would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base.

SSR 85–15, 1985 WL 56857, at *4 (emphasis supplied).

The Ninth Circuit Court of Appeals held that SSR 85–15 does not apply to a case in which the claimant suffers from a combination of exertional and non-exertional impairments. *Roberts v. Shalala,* 66 F.3d 179, 183 (9th Cir.1995), *see also Schaal v. Commissioner of Social Security,* 969 F.Supp. 822, 832 (N.D.N.Y.1996), *vacated on other grounds,* 134 F.3d 496 (2d Cir.1998). Both *Roberts* and *Schaal* seemed to rely upon the fact that SSR 85–15 addressed persons with solely non-exertional impairments, but neither case explained why the same reasoning should not apply to applicants with a combination of exertional and non-exertional impairments.[6] Surely, the considerations of mental functioning that relate to individuals with mental impairments alone would also be relevant to individuals suffering from exertional impairments as well as severe mental impairments.

Even accepting the general statement contained in SSR 85–15 that *"[a] substantial loss of ability to meet any of these basic work-related activities would severely limit*

the potential occupational base," (SSR 85–15), as a guideline which did not require a finding of disability, in this case the ALJ erred in finding that plaintiff retained the ability to perform a nearly full range of any level of work when there was evidence that he lacked any useful ability to deal with work stresses or to maintain attention and concentration. These non-exertional abilities also seem to be "basic work-related activities." (*Id.*). Dr. Bona, plaintiff's treating physician, recorded these restrictions in his August 25, 1994 report to SSA, and they are not contradicted by any evidence in the record. *See Schaal,* 134 F.3d at 504–05 (case remanded for proper evaluation of treating physician's opinion). Thus, this case is remanded so the Commissioner can address Dr. Bona's findings that plaintiff lacked the ability to deal with work stresses or to maintain attention and concentration, and accord them the weight to which they are entitled.

### III. *Significant Numbers of Jobs*

Plaintiff objects to the ALJ's conclusion that there were significant numbers of jobs he could still perform. The ALJ relied upon the testimony of a vocational expert to make this finding, but that testimony was certainly not fully reliable. The vocational expert testified that there were approximately 480 jobs as a security system monitor available in the Buffalo region, and approximately 80,000 such jobs nationally (T. 77 – 80). The ALJ found "[o]n questioning by the Administrative Law Judge, the vocational expert admitted that the number of locally available jobs (four-hundred eighty), might not be a sufficient number to constitute a

---

**6.** The *Roberts* Court *stated:*

> Roberts next argues that SSR 85–15, which supplements regulations providing the manner in which the Secretary will evaluate disability claims when the claimant suffers only "nonexertional" impairments, requires an award of benefits. See SSR 85–15 at 543 (the purpose of the ruling is "to clarify how the regulations ... provide a framework for decisions concerning persons who have only a nonexertional limitation(s) of function or an environmental restriction(s)."). We conclude that this ruling does not require an award of benefits.
>
> SSR 85–15 has no application to Roberts because she claims both exertional and nonex-

> ertional impairments, whereas SSR 85–15 provides guidance only for cases in which the claimant asserts "solely nonexertional impairments." SSR 85–15 at 543. Nonexertional impairments include, for example, the ability to reach, seize, or hold. Id. at 545. Furthermore, "[m]ental impairments are generally considered to be nonexertional...." Id. Roberts, however, also claims exertional impairments. At her hearing, for instance, she testified that pain in her knees limited her ability to sit, stand, walk, and lift, and that she could only walk for two or three blocks at a time. [FN4] SSR 85–15 is therefore inapplicable and does not require an award of benefits.
>
> *Roberts,* 66 F.3d at 183.

realistic employment pool" (T. 33). The VE also indicated the availability of approximately 206 jobs as a rental car deliverer in the Buffalo region (T. 79 – 80). Plaintiff's letter to the Appeals Council noted that these figures were misleading, because more complete statistics from the Bureau of the Census demonstrated that, for instance, there were *no* positions in the car rental category in Chautauqua County, where plaintiff's residence in the City of Dunkirk is located (T. 11, 16). Car rental jobs are typically found near airports and railroad stations. The closest airport to Chautauqua County is in Buffalo, between 60 and 75 miles away.

The Commissioner asserts that the ALJ's conclusion that plaintiff could perform work that existed in the local or national economy is supported by substantial evidence. The Commissioner states that the numbers of jobs cited by the VE were significant, and a finding that jobs are available does not mean that the plaintiff will find a particular job. (Item 14).

As noted above, at step five of the sequential evaluation process, the burden shifts to the Commissioner to demonstrate that plaintiff can still perform a significant number of jobs in the national or local economy.[7] Courts have agreed with the Commissioner that a "significant" number was fairly minimal. Thus, the Eighth Circuit found significant 200 jobs within the entire State of Iowa and 10,000 nationally for a plaintiff who actually performed one of the positions in question. *Johnson v. Chater*, 108 F.3d 178 (8th Cir.1997), *but cf. Jimenez v. Shalala*, 879 F.Supp. 1069, 1076 (D.Colo.1995) (200–250 jobs in entire state of Colorado not significant). Other cases identified somewhat higher numbers of jobs as relevant. For instance, in *Barker v. Sec'y of H.H.S.*, 882 F.2d 1474, 1479 (9th Cir.1989), the court found

1,266 jobs within the Los Angeles region to be a significant number. *See also Wright v. Chater*, 969 F.Supp. 143, 147–48 (W.D.N.Y. 1997, Larimer, J.) (collecting cases) (1700 jobs in the Finger Lakes region found significant).

In this case, plaintiff has pointed to the unsupported nature of the finding that there were significant number of jobs that were available to him. The ALJ's statement regarding the VE's testimony demonstrates that even he was not fully certain that there were significant numbers of jobs available in the economy. Under these circumstances, I am not convinced that the finding that there were significant numbers of jobs available to plaintiff is supported by substantial evidence. It is possible that upon remand, the number of jobs reported in this case will be found to be significant. However, I am not persuaded that the record here supports that position. Upon remand, the question whether a significant number of jobs exist should be reevaluated.

### Conclusion

Plaintiff Roger R. Franklin claims that he was disabled since January 1993. The conclusion that plaintiff could perform work in the national economy was not supported by substantial evidence. Plaintiff's motion for judgment on the pleadings is granted, defendant's motion is denied, and this case is remanded pursuant to the fourth sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), for further administrative proceedings not inconsistent with this decision.

SO ORDERED.

**7.** The Social Security Act states:

An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific

job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means *work which exists in significant numbers either in the region where such individual lives or in several regions of the country.*
42 U.S.C. § 423(d)(2) (1998) (emphasis supplied).